**Alexandria**

EVALYN J. TAYLOR

v.

GOLDIE B. TAYLOR

No. 1092-88-4

Decided January 23, 1990

COUNSEL

Gwendolyn Jo M. Carlberg, for appellant.

Joseph A. Condo (Rees, Broome & Diaz, P.C., on brief), for appellee.

OPINION

## UPON A REHEARING

KEENAN, J.—Evalyn Taylor (wife) appeals from a decree in which the trial court, pursuant to Code § 20-107.3, granted her a monetary award of $63,075. The issues presented in this appeal are: (1) whether the trial court erred in ruling that certain Marriott Corporation stock was the separate property of Goldie B. Taylor (husband); and (2) whether the trial court abused its discretion in awarding the wife less than one-half the value of certain real estate which was marital property. We find that the trial court erred in ruling that the Marriott stock was the separate property of the husband because the stock was purchased with funds which were marital property. Since this matter must be re-

manded to the trial court for reconsideration of the monetary award, we do not decide the remaining issue presented.

The parties were married on December 23, 1955. At the evidentiary hearing, the parties stipulated that each had contributed equally to the marriage. The evidence showed that at the time of the hearing the husband held solely in his name 22,600 shares of Marriott Corporation stock worth approximately $644,000. The husband testified that he purchased the stock in 1958 with funds acquired from the sale of a parcel of real property in Amherst County, which he had acquired before the marriage. The monthly mortgage payment on the Amherst property was $53.04, which the husband continued to make during the marriage. He made the mortgage payment out of a checking account which he had in his name alone at American Security and Trust Company (American Security). During this period of time, the husband also put his salary checks in the American Security checking account.

The husband further testified that he received rental income from the Amherst property which exceeded the amount of the mortgage payments on the property. The Amherst property was sold in March 1958 for $7,500. The husband testified that he used the entire proceeds from the sale of the Amherst property to purchase the Marriott stock. He further testified that since that purchase, he had incurred no expenses in maintaining ownership of the stock. The evidence also showed that the husband later sold some of the Marriott stock to obtain money for a down payment on the purchase of land in Pittsylvania County. He subsequently sold more shares of that stock to pay off the deed of trust on the property.

From 1955 to 1957, the wife was in college and was not employed. After obtaining her degree in 1957, the wife continued to be employed throughout the marriage. The wife testified that her salary was placed in a separate account from which she paid for food, clothing, medical care, and household expenses and educational costs for the children. The wife also testified that the husband paid the mortgage, utility bills, insurance, taxes and fuel from his salary.

The wife argues that pursuant to *Smoot v. Smoot*, 233 Va. 435, 357 S.E.2d 728 (1987), the Amherst property was transmuted from separate to marital property. Since the proceeds from the

sale of that property were used to buy the Marriott stock, the wife asserts that the stock was marital property from the time of its purchase. The wife contends that the Amherst property was transmuted to marital property when the husband used the American Security account, in which he deposited his wages, to make mortgage payments for the property. The wife argues that when the account containing the husband's wages was used to make payments on the separate property, the property was transmuted to marital property, and all proceeds from its sale and all assets purchased with those proceeds, including the Marriott stock, were marital property.

The husband argues in response that since he received rents on the Amherst property in excess of the mortgage payment, marital income was not used to purchase the property, and the separate character of the Amherst property never changed. The husband relies on the trial court's finding that the money for the stock purchase came from the proceeds of the sale of his separate property. Finally, the husband contends that pursuant to *Lambert v. Lambert*, 6 Va. App. 94, 367 S.E.2d 184 (1988), even if marital funds were contributed to the purchase of the Amherst property, those marital funds were not significant to the marital relationship and therefore, their contribution in the form of mortgage payments did not effect a transmutation of the Amherst property. We disagree.

■ Property acquired during the marriage "is presumed to be marital property in the absence of satisfactory evidence that it is separate property." Code § 20-107.3(A)(2); *see Bowers v. Bowers*, 4 Va. App. 610, 615, 359 S.E.2d 546, 549 (1987). Accordingly, in the case before us, the husband bore the burden of producing satisfactory evidence that the Marriott stock was his separate property. From our review of the record we find that the husband failed to meet his evidentiary burden.

The trial court found the husband's testimony to be credible and accepted his statement that the funds used to purchase the Marriott stock came from the sale of the Amherst property. The court likewise accepted the husband's testimony that he kept the Amherst property as separate property. The court also found that the Marriott stock was kept separately. The court therefore concluded that the Marriott stock was separate property since it was purchased with the proceeds of separate property and was main-

tained separately.

Accepting the trial court's findings as to the husband's credibility, we nevertheless find that the husband failed to overcome the presumption that the Marriott stock, which was acquired during the marriage, is marital property since his testimony failed to establish that the Amherst property was maintained as separate property. The husband's salary, which was marital property, was regularly deposited in the American Security account. The record shows that twenty-six mortgage payments were made on the Amherst property with funds drawn from that account. Therefore, in accordance with *Smoot*, 233 Va. at 441, 357 S.E.2d at 731, when the husband made mortgage payments on the Amherst property from the same account in which he deposited his wages, the Amherst property lost its separate character and was transmuted to marital property.

We disagree with the husband's argument that a transmutation did not occur because the marital funds paid into the Amherst property were not significant to the marital relationship. In *Lambert*, this Court stated that "[e]ven if the amount of marital property that is commingled with separate property is insubstantial, if it is nevertheless significant to the marital relationship, that contribution is sufficient to trigger the presumption that the separate property has been transmuted to marital property." *Lambert*, 6 Va. App. at 103, 367 S.E.2d at 190.

We find that the evidence before us mandates a conclusion that the marital funds paid into the Amherst property were significant to the marital relationship. The marital property in question was the husband's salary. It was a major source of the parties' income during the period when it was placed in the American Security account and funds were drawn from that account to make the mortgage payments on the Amherst property. Twenty-six payments totaling $1,379.04 were made on the Amherst property from this account containing the husband's wages.

In addition, the record before us is silent as to how the rental income from the Amherst property was used by the husband and as to whether any of that money was ever deposited in the American Security account. Thus, there is no evidence before us supporting his claim that the receipt of rental income lessened the significance of the marital funds used to make the mortgage pay-

ments on the property. The evidence therefore was insufficient to support the trial court's conclusion that the property was indeed kept separate.

Therefore, under the *Lambert* analysis, we find that because the husband's wages were an asset significant to the marriage relationship at the time that the mortgage payments were made on the Amherst property from an account containing those wages, those mortgage payments triggered a transmutation of the Amherst property. Accordingly, because the Marriott stock was purchased with the proceeds of sale of a marital asset, we hold that it was marital property from the moment of its purchase.

▇▇ However, we also emphasize that:

Finding that separate property has been transmuted into marital property by commingling need not work an inequity to the party who brought the separate property to the marriage because, when making a monetary award under our statute, the trial judge must consider among other factors, the contribution of each party in acquiring, preserving, and maintaining property.

*Lambert*, 6 Va. App. at 103-04, 367 S.E.2d at 190.

On remand, the trial court is required to consider all of the statutory factors, including how and when the assets were acquired, as provided in Code § 20-107.3(E)(6). In its evaluation of the statutory factors, the trial court is vested with broad discretion so that the amount of any monetary award will properly reflect all of the circumstances of the marital partnership. *Rexrode v. Rexrode*, 1 Va. App. 385, 394-95, 339 S.E.2d 544, 550 (1986); *see also Brown v. Brown*, 5 Va. App. 238, 244-45, 361 S.E.2d 364, 368 (1987).

▇▇ The wife also argues that the trial court erred in awarding her less than one-half the value of certain real estate located in Pittsylvania County which was marital property. Initially, we note that in setting a monetary award, there is no presumption of equal distribution of the value of marital property. *Papuchis v. Papuchis*, 2 Va. App. 130, 132, 341 S.E.2d 829, 830 (1986). Nevertheless, "a court is not constrained from making an equal division if it finds it appropriate to do so upon consideration of the

factors set forth in Code § 20-107.3(E)." *Williams v. Williams*, 4 Va. App. 19, 22, 354 S.E.2d 64, 65 (1987). In the case before us, the evidence showed that proceeds from the sale of Marriott stock were used for the down payment on the property, as well as to pay off the deed of trust secured on the property. However, since the monetary award must be reconsidered in light of our finding that the Marriott stock was marital property, we do not address the merits of the wife's argument here.

For the reasons stated, the decision of the trial court is reversed and remanded for further consideration of the monetary award consistent with the principles expressed herein.

*Reversed and remanded.*

Hodges, J., and Baker, J., concurred.