**Richmond**

CATHERINE C. HURT

v.

CHARLES WILLIAM HURT

No. 0510-92-2

Decided July 27, 1993

COUNSEL

John K. Taggart, III (Patricia D. McGraw; Tremblay & Smith, on briefs), for appellant.

Ronald R. Tweel (Elizabeth P. Coughter; Peter L. McCloud; Michie, Hamlett, Lowry, Rasmussen & Tweel; Boyle & Bain, on brief), for appellee.

OPINION

**FITZPATRICK, J.**—Catherine C. Hurt (wife) appeals a decision of the Circuit Court of Albemarle County that (1) resolved the equitable distribution of the parties' marital assets; (2) denied her request for permanent spousal support; and (3) ordered retroactive modification of a prior temporary spousal support award. Charles William Hurt (husband) cross-appeals the trial court's refusal to enforce the parties' prenuptial agreement. As to husband's cross-appeal, we find no error and affirm the judgment on that basis. We conclude, however, that the trial court erred in finding that wife was guilty of desertion and denying her request for spousal support on that basis. Further, the trial court lacked authority to order restitution of monies already paid by husband to wife pursuant to a temporary spousal support award. Accordingly, the judgment of the trial court is affirmed in part, reversed in part and remanded.

## BACKGROUND

The parties were married on May 20, 1984, and separated on March 31, 1986. Wife was awarded a no-fault divorce on June 17, 1987. The decree of divorce included the following provision:

It is further ADJUDGED, ORDERED and DECREED that the *pendente lite* decree previously entered by this Court shall continue in full force and effect until further Order of this Court, provided, however, that should the [husband] prevail in establishing the [wife's] desertion as alleged in his Bill for Divorce or other fault grounds set out in Va. Code § 20-107.1, any amounts paid by the [husband] to the [wife] pursuant to said decree from the

date of entry of this decree until the entry of a final decree shall be refunded to [husband] by [wife] or offset against the Court's equitable distribution award to the [wife], if any, or subject to such other equitable modification as the Court deems appropriate.

The court specifically reserves the right to hear evidence and make such decrees as the Court deems appropriate concerning spousal support, equitable distribution, property division and such other matters as are appropriately before the Court.

Wife noted her objection to the above portion of the decree providing for the retroactive modification of the court's prior temporary spousal support order.

Over the next four years, the trial court held a series of hearings in order to determine equitable distribution and permanent spousal support.[1] The trial court's final decree of equitable distribution and support found wife guilty of desertion and, therefore, denied her right to permanent spousal support. The court granted her a monetary award of $350,000 and then reduced that amount by $118,126.66, which represented a credit to husband for the temporary support he paid from the date of entry of the divorce decree.

Husband is a medical doctor and real estate investor; wife is a real estate broker. The parties dated for some time and then began to live together in wife's home. Thereafter, they became engaged and set a wedding date of June 4, 1983. On June 2, 1983, with each parties' counsel present, husband presented wife with a prenuptial agreement, which she signed. That evening, husband informed wife that he was canceling the wedding. Wife was distraught over the cancellation and went to Georgia to recover. Upon her return, wife discovered that husband had removed almost all the furniture from her home.

After a period of separation, the parties resumed their relationship and were married on May 20, 1984. This was a second marriage for husband and a third marriage for wife. Soon after their marriage, the parties began to experience marital problems. In April 1986, wife went out of town to visit her sister. Upon wife's return, she discovered

---

[1] The parties separated on March 31, 1986, suit was instituted on April 11, 1986 and the parties were divorced by final decree entered June 17, 1987. Accordingly, this case is controlled by statutes in force prior to the July 1, 1990 amendments. *See Thomas v. Thomas*, 13 Va. App. 92, 94, 408 S.E.2d 596, 597 (1991).

that husband had removed a significant amount of household furnishings and virtually all of his personal belongings from the marital home. Husband left a note to his wife stating that he had removed the items for the purpose of furnishing a model home, and that he would return later in the day.

Wife testified that she became "terrified" and relived the incident after the cancellation of the first wedding date. She then implored her husband not to return home that evening. When he attempted to do so, she locked the doors and would not let him in.

Husband filed for divorce on the ground that wife locked him out of the house and was, therefore, guilty of desertion. Wife filed a cross-bill alleging cruelty and desertion. At a pre-trial hearing, the court ruled that: (1) the prenuptial agreement was a valid agreement when signed; however, husband anticipatorily breached and repudiated the agreement; (2) that the consideration for the agreement, the marriage, failed when husband canceled the scheduled June 4 wedding; and (3) "that the agreement could not be revitalized without a mutual consent which the court finds from the evidence did not occur." Accordingly, the trial court held that the prenuptial agreement was invalid, unenforceable, and did not bar wife's request for spousal support or equitable distribution.

After the parties were divorced on the no-fault ground of a one-year separation, the trial court conducted a hearing on the issue of fault for purposes of equitable distribution and spousal support. The trial court concluded that wife deserted her husband because she did not have a right to bar husband from the marital home, and that this determination barred her request for permanent spousal support. The trial court also used this finding as a basis to modify retroactively the temporary spousal support order.

Both before and during the marriage, husband owned several business entities through which he amassed a multi-million dollar fortune in real estate. His business activities during the marriage included real estate development, construction, sales, and management. Primarily for tax reasons, husband's real estate transactions were complex and frequently involved multiple conveyances and reconveyances among the various entities that he controlled. Husband's primary source of funds for living expenses was obtained by encumbering property he

owned directly or through his various business entities.[2] The evidence is undisputed that prior to the first scheduled wedding date husband intended to maintain his premarital property as his separate property.

## REPUDIATION OF THE PRENUPTIAL AGREEMENT

■ "In Virginia, 'marital property [agreements] entered into by competent parties upon valid consideration for lawful purposes are favored in the law and such will be enforced unless their illegality is clear and certain.' " *Drewry v. Drewry*, 8 Va. App. 460, 466, 383 S.E.2d 12, 14 (1989) (citations omitted). Such agreements "are subject to the same rules of construction and interpretation applicable to contracts generally," *Fry v. Schwarting*, 4 Va. App. 173, 180, 355 S.E.2d 342, 346 (1987), and "shall be valid and enforceable if otherwise valid as contracts." Code § 20-154.[3]

The evidence established that the parties planned to wed on June 4, 1983. Two days before the scheduled wedding date, the parties, after adequate disclosure of assets and each with the advice of counsel, entered into a valid premarital agreement in contemplation of their marriage. Sometime later that day, husband called off the wedding. This act caused a great deal of distress to wife and resulted in the parties terminating their cohabitation and social relationship. Several months thereafter, the parties resumed their relationship and were married on May 20, 1984. There was evidence presented from which the court could have found that prior to the date of their marriage the parties no longer considered the agreement valid or in existence.[4] Husband argues that the subsequent marriage of the parties created a binding and enforceable prenuptial agreement. We disagree.

---

[2] Husband's standard practice was to borrow up to one hundred percent of any equity in the properties he held. This provided him with liquid assets without realizing "income" for taxation purposes. Generally, borrowed funds produced from this method of "cashing-out" the equity of husband's *separate* property is not considered "earned income" for services rendered during the marriage. As such, these funds are classified as separate property unless commingling has occurred.

[3] The prenuptial agreement at issue in this case was executed on June 2, 1983. Accordingly, our determination of this case is not controlled by the "Premarital Agreement Act" set forth in Chapter 8 of Title 20 of the Code of Virginia. Code § 20-147 provides that the Premarital Agreement Act "shall apply to any premarital agreement executed on or after July 1, 1986."

[4] Wife presented evidence that husband assured her, their respective children, and friends that the prenuptial agreement was no longer valid and that the marriage was with "no strings attached."

■ The trial court found that husband's act of calling off the contemplated wedding two days before the scheduled date was a clear act of repudiation. "It is firmly established that for a repudiation of a contract to constitute a breach, the repudiation must be clear, absolute, unequivocal, and must cover the entire performance of the contract." *Vahabzadeh v. Mooney*, 241 Va. 47, 51, 399 S.E.2d 803, 805 (1991). The trial court heard evidence as to the circumstances of the cancellation of the first wedding date and the intent of the parties upon their subsequent marriage. The trial court concluded from this evidence that the contract had been repudiated and that no subsequent mutual consent of the parties had been given to revitalize the repudiated agreement.

■ "[W]e view the evidence and all reasonable inferences in the light most favorable to [wife] the prevailing party below. Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Pommerenke v. Pommerenke*, 7 Va. App. 241, 244, 372 S.E.2d 630, 631 (1988) (citations omitted). The contemplated marriage ceremony and consummation of the marriage were crucial components of the parties' agreement. The evidence proved that husband affirmatively refused to perform his obligation under the agreement. From this evidence, the fact finder could properly find that husband's refusal was an "unequivocal or positive expression of abandonment" of the agreement, or that his conduct "evince[d] an intent wholly inconsistent with the intention to perform" his obligations under the prenuptial agreement. *Board of Sup'rs of Fairfax County v. Ecology One, Inc.*, 219 Va. 29, 33, 245 S.E.2d 425, 427-28 (1978).[5] Accordingly, we affirm the trial court's judgment that the prenuptial agreement had been repudiated and, therefore, was unenforceable.

---

[5] Husband's argument that the trial court erred because contracts of this nature are not construed as if "time were of the essence" is not dispositive. We recognize that the agreement had no express requirement that the marriage ceremony be performed within a certain period of time, and that "[t]ime is not ordinarily deemed in equity as of the essence." *Boston v. Shackelford*, 162 Va. 733, 755, 175 S.E. 625, 633 (1934). However, this was not a case where a party merely asked to delay the ceremony or where a party failed to show up at the alter on the scheduled date. Rather, the evidence in this case established that husband canceled the wedding entirely and that the relationship between the parties terminated.

## EQUITABLE DISTRIBUTION — CLASSIFICATION OF PROPERTY

Wife argues that the trial court erred in classifying certain properties held by husband as his separate property. She concedes that the properties at issue, which were acquired by husband before the marriage, were initially his separate property. She contends, however, that through commingling and nonmonetary contributions by the parties during marriage, these properties were transmuted into marital property.

"[W]hether the property is separate or marital is determined by the statutory definition and is not determined by the legal title." *Garland v. Garland*, 12 Va. App. 192, 195, 403 S.E.2d 4, 6 (1991). The properties that wife argues should have been classified as marital were all acquired, transferred, sold or encumbered by the various entities that husband controlled through one master bank account. "All property acquired by either spouse during the marriage is presumed to be marital property in the absence of satisfactory evidence that it is separate property. . . . The party claiming that property should be classified as separate has the burden to produce satisfactory evidence to rebut this presumption." *Stroop v. Stroop*, 10 Va. App. 611, 615, 394 S.E.2d 861, 863 (1990). The trial court received conflicting evidence as to whether the husband maintained the master account and the various legal entities as his separate property or whether marital assets had been commingled causing transmutation. *See generally Smoot v. Smoot*, 233 Va. 435, 441, 357 S.E.2d 728, 731 (1987).

The evidence presented by wife suggested that the master account was just one large account where all of husband's income and assets were pooled together. Husband presented contrary evidence, including testimony from his bookkeeper, that the master account was similar to a private banking system. Husband's evidence was that while he had only one account with a banking institution, within that one account he managed his businesses with a complex ledger system for each entity and for his business and personal accounts. This allowed for individual tracking of each entity's financial condition.

From the evidence presented, the trial court could have found that the amounts accounted for in the ledgers of husband's entities and his business ledgers were maintained as separate property. The trial court did not err in choosing to accept the testimony of husband's bookkeeper rather than that of wife's accounting expert. *See Clements*

*v. Clements*, 10 Va. App. 580, 584, 397 S.E.2d 257, 259 (1990). In addition, we find that sufficient evidence rebutted the presumption that the property acquired during the marriage was marital, because the evidence proved that it "was obtained with totally separate funds and was maintained as separate property." *Marion v. Marion*, 11 Va. App. 659, 665, 401 S.E.2d 432, 436 (1991).

We agree with wife's contention that a spouse's income earned from services he or she rendered during the marriage is marital property. *See Taylor v. Taylor*, 9 Va. App. 341, 345, 387 S.E.2d 797, 799 (1990). Therefore, in the case at bar, any earned income that husband received and deposited into his personal ledger would cause transmutation of the personal ledger aspect of the master account.

> In [*Lambert v. Lambert*, 6 Va. App. 94, 103, 367 S.E.2d 184, 190 (1988)] this Court stated that "[e]ven if the amount of marital property that is commingled with separate property is insubstantial, if it is nevertheless significant to the marital relationship, that contribution is sufficient to trigger the presumption that the separate property has been transmuted to marital property."

*Taylor*, 9 Va. App. at 345, 387 S.E.2d at 799. However, conflicting evidence was presented as to whether husband ever deposited such funds into the master account, and the trial court found as a fact that "[r]eal estate commissions, management fees and salary earned during the marriage" equaled zero. Accordingly, we uphold the trial court's ruling that no transmutation occurred.

## SPOUSAL SUPPORT — DETERMINATION OF FAULT

When this case was filed, it was the "settled law in this Commonwealth that a party shall not be required to pay permanent spousal support if there exists in such spouse's favor a ground of divorce under Code § 20-91(6)." *Zinkhan v. Zinkhan*, 2 Va. App. 200, 210, 342 S.E.2d 658, 663 (1986).[6] The trial court denied wife permanent spousal support based on the finding that husband had established a ground of divorce based on wife's desertion, a fault ground enumerated under Code § 20-91(6). This finding was error.

---

[6] Code § 20-107.1 has since been amended to bar permanent spousal support from a spouse "if there exists in such spouse's favor a ground of divorce under the provisions of § 20-91(1)," provided that such denial would not constitute a manifest injustice.

■ The evidence at trial did not justify a finding that husband proved a ground of divorce for desertion because husband's evidence lacked the required corroboration.

> Code § 20-99(2) . . . makes clear to trial courts that a complainant must prove and corroborate his or her grounds for divorce by independent evidence, regardless of whether a defendant answers. Every element or essential charge need not be corroborated, nor must the corroborating evidence, standing alone, prove the grounds for divorce, but corroboration must give sufficient strength to the complainant's testimony to be clearly worthy of belief.

*Emrich v. Emrich*, 9 Va. App. 288, 295-96, 387 S.E.2d 274, 278 (1989) (citations omitted).

■ We agree with husband that "[w]here it is apparent that there is no collusion, the corroboration needs to be only slight." *Venable v. Venable*, 2 Va. App. 178, 184, 342 S.E.2d 646, 650 (1986). However, "[t]he general rule is that where a particular fact or circumstance is vital to complainant's case, some evidence of the same, *in addition to the complainant's own testimony*, is essential." *Dodge v. Dodge*, 2 Va. App. 238, 245, 343 S.E.2d 363, 367 (1986) (emphasis added). In the case at bar, the only evidence in the record in support of husband's charge of desertion is his own testimony.[7] Such evidence is insufficient as a matter of law to establish a ground of divorce. *See* Code § 20-99(1). As such, it cannot operate to bar permanent spousal support to wife.

In holding that wife's request for spousal support is not barred, we reject husband's argument that corroboration is not required to bar spousal support pursuant to Code § 20-107.1. That Code section, in effect when this case was filed, barred spousal support "if there exists in such spouse's favor a ground of divorce under the provisions of § 20-91(1), (3) or (6)." Therefore, a spouse must prove *all* the elements required under the applicable subsections of Code § 20-91 that

---

[7] At oral argument before us, husband argued that there was corroborating evidence in the record to support the trial court's finding. The record is voluminous. If husband is correct in his assertion that there is corroborating evidence, it should have been properly cited to us in the briefs. "We will not search the record for errors in order to interpret the [husband's] contention and correct deficiencies in a brief." *Buchanan v. Buchanan*, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992).

would satisfy an actual decree of divorce.[8] Accordingly, we reverse the judgment of the trial court on this basis.

## RETROACTIVE MODIFICATION OF SPOUSAL SUPPORT

Wife argues that the trial court erred in granting husband restitution (or a credit) for the monies that he paid pursuant to the trial court's award of temporary spousal support. The trial court's order of restitution was contingent upon its subsequent finding of desertion by the wife. For the reasons set forth above, the trial court's finding of desertion was error and, as such, it was error to give a credit to husband for amounts he was required to pay pursuant to the court's prior order.

Notwithstanding such error, the Supreme Court of Virginia has recently clarified the law on this issue in *Reid v. Reid*, 245 Va. 409, 429 S.E.2d 208 (1993). In *Reid*, the Court held that "[o]nce the amount of spousal support is determined, the statutes and case law specifically limit the divorce court's authority to retroactively modify that amount, absent fraud on the court." *Id.* at 414, 429 S.E.2d at 211. Accordingly, the judgment of the trial court is reversed on this basis.

For the reasons set forth above, the judgment of the trial court is affirmed as to husband's cross-appeal and wife's appeal of the equitable distribution award; reversed and remanded on the issue of spousal support; and reversed as to the court's granting to husband a credit for funds expended pursuant to the court's prior decree.

*Affirmed in part,*
*reversed in part,*
*and remanded.*

Koontz, J.,* and Elder, J., concurred.

---

[8] We recognize that a distinct difference exists between spousal support and the evidentiary requirements associated with such an award under Code § 20-107.1, and an equitable distribution award under Code § 20-107.3. While corroboration is not required under the latter because the court, in making an equitable distribution award, must consider "[t]he circumstances and factors which contributed to the dissolution of the marriage," Code § 20-107.3(E)(5), corroboration is required under the former. *See generally Brown v. Brown*, 5 Va. App. 238, 361 S.E.2d 364 (1987).

* When the case was argued, Judge Koontz presided. Judge Moon was elected Chief Judge effective May 1, 1993.