COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Coleman and Lemons
Argued at Salem, Virginia


CECIL JENNINGS CHILDERS

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 2659-98-3          JUDGE DONALD W. LEMONS
                                         JUNE 29, 1999
PATRICIA PEVERALL CHILDERS


            FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
                   George E. Honts, III, Judge

         Thomas W. Roe, Jr. (Spigle & Roe, P.C., on
         brief), for appellant.

         William L. Heartwell, III (Heartwell & Wills,
         on brief), for appellee.


     Cecil Jennings Childers appeals the Circuit Court of

Botetourt County's order refusing to enforce a separation

agreement signed by the parties on the grounds that the

agreement had not been properly produced, that two conditions

subsequent to the agreement had not been met, and that the

parties had abandoned their agreement.  Childers also argues

that the court erred by granting his wife a divorce on the

grounds of post-separation adultery, in finding that the

husband's extramarital affairs had a negative effect upon the

wife's health, by dividing the marital estate unequally, and by

awarding an excessive amount of spousal support.  We hold that

     *Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

although the trial court erred in finding that the separation agreement had not been properly produced, the agreement was unenforceable. We also affirm the divorce decree entered on the grounds of the husband's post-separation adultery, its division of marital property and its award of spousal support.

## I. BACKGROUND

Cecil Jennings Childers ("husband"), appellant, and Patricia Peverall Childers ("wife"), appellee, were married in 1983. During the marriage, the wife discovered three extramarital affairs of the husband. The wife forgave him for all three affairs, until she discovered that he was continuing his third affair. In December 1996, the parties agreed to separate, but to remain in the marital home in separate bedrooms. On December 13, 1996, the parties drafted and executed an agreement ("Agreement") that purported to memorialize their living arrangements and divide certain marital property. In April 1997, the husband moved out of the marital home and began openly cohabiting with Sharon L. Sanders, his paramour from the third affair.

On June 30, 1997, the wife filed a Bill of Complaint in the Circuit Court of Botetourt County seeking a divorce. On August 1, 1997, the husband filed an Answer and Cross-Bill. On August 28, 1997, the court ordered the husband to pay pendente lite spousal support in the amount of $819.50 per month, less a credit of $219.50 as long as he made payments on

-

the wife's vehicle.  On March 28, 1998, the court found the husband in contempt for his failure to pay spousal support and established arrearages at $900.

A formal hearing began on September 17, 1998 in the Circuit Court of Botetourt County.  The husband orally moved that the Agreement be recognized by the court and incorporated into the divorce decree.  The court took the husband's motion under advisement, and the case proceeded as if no agreement existed.

By its two letter opinions, each dated September 25, 1998, the court refused to enforce the Agreement, holding that it had not been properly "produced," that two conditions subsequent had not been met, and that the parties had abandoned their contract. The court granted the wife a decree of divorce based upon the husband's post-separation adultery, made an equitable distribution award, and awarded spousal support to the wife. The court's findings were incorporated into the Final Decree of Divorce, entered on October 20, 1998.

## II.  SEPARATION AGREEMENT

The parties executed the Agreement on December 13, 1996. Following its execution, the Agreement remained in the exclusive control of the wife.  The Agreement stated that the parties "agree to be separated," living within the same physical residence in separate bedrooms.  The Agreement also provided that upon the sale of the marital residence, the wife would receive the first $30,000 of the proceeds.  The husband agreed

-

to purchase a vehicle for the wife, and the wife agreed to repay a marital debt owed to Ed Gray. The remaining joint debts were to be paid out of the surplus. In addition, both parties agreed to show "respect" to the other, and not to bring third parties into the home if doing so would "embarrass or upset" the other party. The Agreement provided:

> This agreement will be binding until a legal
> document is drawn up by an attorney. This
> is to protect both parties, both financially
> and mentally.

The Agreement was typed by the wife and signed by both parties.

On appeal, the husband argues that the validity of the Agreement is not in question on the basis of fraud, duress or that its terms were unconscionable.

### A.    "Production" of the Agreement

The court found that the husband did not properly "produce" the Agreement, stating,

> The signed document was not produced before
> the Court until 17 September 1998. This
> cause was commenced by filing a bill of
> complaint on 30 June 1997 and several
> hearings have been conducted pendente lite.
> The document is not pled in the bill. No
> motions were ever made to produce the
> agreement or to have the agreement adopted
> pending litigation. The existence of the
> document was not revealed to the court until
> 14.5 months after the litigation commenced.

Because he made an oral motion to have the Agreement adopted at the beginning of the trial on September 17, 1998, the

-

husband argues that the court erred in stating that there were no motions made to adopt the agreement.

The husband cites Code § 20-109(C)in support of his contention that he presented the Agreement in a timely manner. Code § 20-109(C) states:

> In suits for divorce . . . . if a stipulation or contract signed by the party to whom such relief might otherwise be awarded is filed before entry of a final decree, no decree or order directing payment of support and maintenance for the spouse, suit money, or counsel fee or establishing or imposing any other condition, monetary or nonmonetary, shall be entered except in accordance with that stipulation or contract. If such a stipulation or contract is filed after entry of a final decree and if any party so moves, the court shall modify its decree to conform to such stipulation or contract.

The statute requires the court to enforce any written agreement filed with the court prior to its entry of the decree. Here, the husband made an oral motion that the Agreement be enforced on September 17, 1998, and attached the Agreement as an exhibit. The entry of the final decree occurred on October 20, 1998.

Nothing in the statute requires the filing of the Agreement in a specific motion; rather, the statute states only that the Agreement must be "filed" with the court prior to the entry of the final decree. Based upon Code § 20-109(C), we hold that the court erred in finding that the Agreement had not been properly "produced."

-

## B.  Abandonment

The trial court stated as one of its reasons for refusing to enforce the Agreement:

> The Court finds that the re-instituted negotiation by Husband regarding the disposition of the marital property through his counsel constitutes an abandonment of the agreement struck by Husband and Wife. The signed document also was obviously intended as an interim measure to be formalized by a "legal document" which was never drafted in conformity to the temporary understanding between the parties.  The document also clearly contemplates the sale of the marital home and no attempt at marketing the house or forcing the sale under the signing was made until well into 1998 after Husband had left the house and moved in with his friend, and that attempt at sale was, at best, a half-hearted attempt unilaterally made by Wife.  Husband could have- but did not - move to force the sale of the house.

The husband argues that the court's reliance upon his failure to draft a "legal document" in accordance with the Agreement "defies the reality of the situation."  Given the wife's stated opposition to the enforcement of the Agreement, the husband argues that it would have been impossible for him to obtain the wife's signature on the formalization of an agreement that she sought to repudiate.

The husband also argues that any attempt he made to "force the sale of the marital home" would have been fruitless for him because the wife had taken the position that the Agreement was not binding.  Rather, the husband argues "[u]ntil such time as

-

the court rejected the wife's position that the [A]greement was invalid, [he] had no reason to make repeated requests that the wife comply with it."

The husband also argues that the court erroneously relied on his attempts to institute renegotiations with the wife as evidence that he had abandoned the Agreement. The husband contends that the only "major point of difference" was the variance between the percentage of the home that the wife would receive from the proceeds of the sale. The husband argues that this variation cannot be considered an abandonment of his earlier position.

In Hurt v. Hurt, 16 Va. App. 793, 433 S.E.2d 493 (1993), we affirmed the trial court's refusal to enforce the parties' prenuptial agreement on the basis that it had been abandoned by the husband. In Hurt, the husband and wife dated for a period of time, lived together in the wife's home, and became engaged. The parties set a wedding date of June 4, 1983. See id. at 795, 433 S.E.2d at 495. On June 2, 1983, the husband gave the wife a prenuptial agreement, with both of their attorneys present, which the wife signed. The husband cancelled the wedding that evening. See id. at 795, 433 S.E.2d at 495. After a period of separation, the parties reconciled, and were married on May 20, 1984. The parties experienced marital discord, and the husband filed for divorce. He argued that the prenuptial agreement signed on June 2, 1983 controlled the parties' property

-

distribution.  See id. at 796, 433 S.E.2d at 495-96.  At the

pretrial hearing, the court ruled "the prenuptial agreement was

a valid agreement when signed; however, [the] husband

anticipatorily breached and repudiated the agreement."  Id. at

796, 433 S.E.2d at 495-96.  The court considered his act of

calling off the wedding two days prior to the date "a clear act

of repudiation."  Id. at 798, 433 S.E.2d at 497.  "[F]or a

repudiation of a contract to constitute a breach, the

repudiation must be clear, absolute, unequivocal, and must cover

the entire performance of the contract."  Id. at 798, 433 S.E.2d

at 496 (citation omitted).

We agreed with the trial court, stating:

> [W]e view the evidence and all reasonable
> inferences in the light most favorable to
> [wife] the prevailing party below.  Where,
> as here, the courts hears the evidence
> ore tenus, its finding is entitled to great
> weight and will not be disturbed on appeal
> unless plainly wrong or without evidence to
> support it.  The contemplated marriage
> ceremony and consummation of the marriage
> were crucial components of the parties'
> agreement.  The evidence proved that [the]
> husband affirmatively refused to perform his
> obligation under the agreement.  From this
> evidence, the fact-finder could properly
> find that husband's refusal was an
> "unequivocal or positive expression of
> abandonment" of the agreement or that his
> conduct "evince[d] an intent wholly
> inconsistent with the intention to perform"
> his obligations under the prenuptial
> agreement. . . .  Accordingly, we affirm the
> trial court's judgment that the prenuptial

-

> agreement had been repudiated and, therefore, was unenforceable.

Id. at 798, 433 S.E.2d at 497 (citations omitted).

Here, the actions of the husband constituted an abandonment of the terms of the Agreement.  First, the husband moved out of the house before it was sold, in derogation of the terms of the Agreement, in order to live with his paramour, Sanders.

Second, the husband requested in his Cross-Bill that the court divide the property pursuant to Code § 20-107.3.  A party "will not be permitted to 'approbate and reprobate' at the same time."  Noland v. Fowler, 179 Va. 19, 25, 18 S.E.2d 251, 254 (1941).  On August 1, 1997, the husband filed a Cross-Bill in which he requested that the court divide the property pursuant to the equitable distribution statute.  The Cross-Bill neither mentioned the existence of the Agreement, nor requested that the marital property be distributed according to its terms. Requesting equitable distribution pursuant to Code § 20-107.3 is inconsistent with claiming that a property settlement agreement precludes equitable distribution.

Third, the husband attempted to negotiate a settlement with the wife that differed from the terms of the Agreement.  While taking an alternate position in negotiations is not, by itself, enough to prove repudiation of the Agreement, it is evidence that may be considered by the court.

-

Fourth, the husband did not assert the enforceability of the Agreement until the day of the hearing, fourteen and one-half months after the litigation began.

Fifth, the Agreement stated that the parties were not to "bring anyone into this house that would embarrass or upset the other party," and that the parties must show "respect" to one another. The husband also ignored this condition. The husband moved out of the marital home and began residing with Sanders, his paramour during the marriage, in spite of the "embarrassment and upset" caused to the wife.

We cannot say that the trial court was plainly wrong or without evidence to support its ruling that the parties had abandoned the Agreement, and we need not address the husband's additional contentions with regard to the enforceability of the Agreement.

### III. DIVORCE GROUNDS

On appeal, husband argues that the trial court erred by granting the wife a divorce on grounds of post-separation adultery. The record reveals that husband's objection to the grounds for divorce was stated in a filing entitled "Objections To The Court's Rulings From The September 17, 1998 Hearing" as follows:

> The Court erred when it granted the Complainant a divorce based on fault. The evidence was that the Defendant had to leave the Complainant due to her spending too much money for financial reasons.

-

Rule 5A:18 requires that objections to a trial court's action or ruling be made with specificity in order to preserve an issue for appeal.  See Campbell v. Commonwealth, 12 Va. App. 476, 480, 405 S.E.2d 1, 2 (1991) (en banc).  A trial court must be alerted to the precise "issue" to which a party objects.  See Neal v. Commonwealth, 15 Va. App. 416, 422-23, 425 S.E.2d 521, 525 (1992).  Because no objection was made by husband that the evidence was not sufficient to support the trial court's finding of post-separation adultery, we will not consider the issue on appeal.

### IV.  EQUITABLE DISTRIBUTION

With respect to equitable distribution, the court stated,

> The marital estate subject to distribution has a value of $132,884.00.  Of that sum, 55 percent is awarded to Wife and 45 percent is awarded to Husband.
>
> Husband is confirmed in ownership of the Stoney Creek property and the Ford pickup, if he so chooses.  Wife is confirmed in the ownership of the Mercury automobile, if she so chooses.
>
> *       *       *       *       *       *       *
>
> Wife is drawing disability benefits. Husband may draw a small pension ($378.00 per month) after October 2001.  Given Wife's disability, the length of marriage, the award above, and other factors, the Court finds neither party is entitled to share in the other's deferred or disability benefits.

The husband argues that the court erred in awarding fifty-five per cent of the marital estate to the wife.  The

-

husband states that the "trial court's analysis of most of the statutory factors shows no reason to prefer one party over the other" and "the trial court committed reversible error by accepting the wife's testimony that the husband's infidelity had a negative effect on her health."

"Virginia has no presumption in favor of an equal division of the marital property." O'Loughlin v. O'Loughlin, 20 Va. App. 522, 525, 458 S.E.2d 323, 324 (1995). "The amount and form of any equitable distribution award are matters committed to the sound discretion of the trial court, [but] any division or award must be based on the parties' equities, rights and interests in the property." Barker v. Barker, 27 Va. App. 519, 535, 500 S.E.2d 240, 247-48 (1998) (citations omitted). "On appeal, the trial court's award of equitable distribution will not be reversed [u]nless it appears from the record that the [court] has abused [its] discretion, that [it] has not considered or has misapplied one of the statutory mandates, or that the evidence fails to support the findings of fact underlying [its] resolution of the conflict in the equities." Luczkovich v. Luczkovich, 26 Va. App. 702, 708, 496 S.E.2d 157, 160 (1998) (citations omitted).

The wife testified that the husband gave her herpes and she suffered from depression, fibromylagia, and chronic fatigue syndrome. At trial, the husband argued that the wife should not be permitted to testify about medical diagnoses. On appeal, the

-

husband argues further that the court gave disproportionate weight to the wife's testimony that his actions had caused a negative impact on her health.  With respect to the wife's testimony about her illnesses:

> The rule permitting lay or nonexpert witnesses to testify to the apparent physical condition of a person which is open to ordinary observation by persons of common experience does not extend to permit such witnesses to testify as to the existence, nature, or character of latent conditions or to the existence of a particular disease which is discoverable, or the nature and character of which is determinable, only through the peculiar experience, knowledge, and training of a physician.  Generally, opinions of such (lay) witnesses are limited to opinions as to physical condition.

Pepsi-Cola Bottling Co. v. McCullers, 189 Va. 89, 98, 52 S.E.2d 257, 260 (1949) (citations omitted).  The trial court erred in admitting the wife's testimony regarding the diagnoses of her illnesses.

However, the evidence was uncontested that the wife was on full disability from her employer at the time of the hearing. The wife testified that her disability resulted from the husband's actions and from the stress of his infidelities and their unhappy marriage.  The court found that the wife was permanently disabled as a result of her suffering.  We hold that the court did not err in weighing the effects that the husband's actions had on the wife when making its equitable distribution determination, and we affirm its equitable distribution order.

-

V.  SPOUSAL SUPPORT

The court ordered the husband to pay $550 per month to the wife as spousal support, effective October 1, 1998.  The husband argues that the court could not award spousal support because any award of spousal support is in conflict with the 1996 Agreement.  In the alternative, the husband argues that if the Agreement was not enforceable, the court erred in awarding an excessive amount of spousal support.

Having previously determined that the Agreement was not enforceable, we consider only whether the amount of the award was excessive.  "Whether to award spousal support and the particular amount lies within the sound discretion of the trial judge."  Jennings v. Jennings, 12 Va. App. 1187, 1196, 409 S.E.2d 8, 14 (1991).  In reviewing an award of spousal support, "[w]e view the evidence in the light most favorable to wife, the prevailing party below."  Barker v. Barker, 27 Va. App. 519, 528, 500 S.E.2d 240, 244 (1998) (citations omitted).  "[T]he judgment of the trial court shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it."  Code § 8.01-680.

We hold that the court did not err in ordering the husband to pay $550 per month in spousal support.  At the time of the hearing, the wife was receiving a disability award.  The wife introduced evidence that although her disability was permanent, the disability award she was receiving was temporary.  Evidence

-

also revealed that the wife was making two mortgage payments, while the husband was living in a rented home with Sanders. Although the result of the court's award was to provide the wife with an income greater than the husband, the spousal support award was not "plainly wrong" or "without evidence to support it," and we affirm the trial court's decision.

## VI.  CONCLUSION

We hold that the court did not err in refusing to enforce the Agreement and in granting the wife a divorce on the grounds of the husband's post-separation adultery.  We affirm the court's equitable distribution order and its award of spousal support.

<u>Affirmed.</u>

-