COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Frank and Humphreys
Argued at Salem, Virginia


RAZIEH MAKOUI

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0672-11-3                       JUDGE LARRY G. ELDER
                                                       NOVEMBER 22, 2011
CYRUS MAKOUI


               FROM THE CIRCUIT COURT OF ROANOKE COUNTY
                        William D. Broadhurst, Judge

          Frank K. Friedman (Erin B. Ashwell; Neal S. Johnson; Woods
          Rogers PLC; Johnson Law, P.L.C., on briefs), for appellant.

          William C. Maxwell (Ryan E. Thum; Osterhoudt, Prillaman, Natt,
          Helscher, Yost, Maxwell & Ferguson, PLC, on brief), for appellee.


      Razieh Makoui (wife) appeals from the property distribution and spousal support awards

entered in her divorce from Cyrus Makoui (husband).  On appeal, she contends the trial court

erred in holding that the parties' premarital agreement was enforceable under Code § 20-151.

She contends husband failed to make a fair and reasonable disclosure of his finances prior to

their execution of the agreement and that the agreement was unconscionable.  Alternatively, she

argues the court erred in holding equitable estoppel did not apply either to prevent husband from

relying on the agreement or to prevent him from maintaining as separate property two categories

of assets otherwise covered by it—the marital home and various stocks.  Finally, she contends

the trial court erred in suspending discovery, thereby substantially impairing her ability to litigate

her case.  On cross-error, husband contends the court erroneously failed to give effect to the

agreement by denying his motion to reduce the ordered *pendente lite* support retroactively to the

_____
      [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

date of his filing the motion for reduction and ordering him to pay a support arrearage. To the

extent these challenges are preserved for appeal, we hold they are without merit, and we affirm.

I.

A. ENFORCEABILITY OF THE AGREEMENT UNDER CODE § 20-151

Virginia's Premarital Agreement Act (the Act) provides that a premarital agreement is

not enforceable if the person against whom enforcement is sought proves that:

> [t]he agreement was unconscionable when it was executed and,
> before execution of the agreement, that person (i) was not provided
> a fair and reasonable disclosure of the property or financial
> obligations of the other party; and (ii) did not voluntarily and
> expressly waive, in writing, any right to disclosure of the property
> or financial obligations of the other party beyond the disclosure
> provided.

Code § 20-151(A). Wife, as the party seeking "'to void or rescind the agreement,'" bore the

burden of proving "'the grounds alleged'" by clear and convincing evidence. Sims v. Sims, 55

Va. App. 340, 349, 685 S.E.2d 869, 873 (2009) (quoting Drewry v. Drewry, 8 Va. App. 460,

463, 383 S.E.2d 12, 12 (1989)).

1. Fair and Reasonable Disclosure of Assets

Wife contends that although husband disclosed some of his assets to her before she

signed the agreement, he "dramatically understat[ed] his net worth," disclosing only about

$68,000 worth of stock via the financial statements attached to the 1993 agreement, whereas he

testified in 2009 that he owned $250,000 to $300,000 of stock at the time of the 1993 agreement.

She contends further that the trial court, in comparing husband's premarital disclosures with his

testimony, improperly included husband's other tangible and intangible assets in its calculation

of the value of his stocks, thereby erroneously finding that he disclosed all of his stock and, thus,

that his disclosure was "fair and reasonable" as required by the statute.

- 2 -

The evidence, viewed in the light most favorable to husband, supports the trial court's findings and conclusions. First, the agreement specifically states "[each party has] given fair and reasonable disclosure of his or her property and financial obligations, as more specifically set forth in the attached Exhibits." Under the express terms of the statute, this "[r]ecitation" creates "a prima facie presumption that [it is] factually correct." Code § 20-151(B).

Second, the statute requires only that the disclosure be "fair and reasonable" and not that the disclosure include a present fair market value for each item of property disclosed. The evidence supports the trial court's finding that husband's disclosure was "fair and reasonable" under this standard. Attachment A disclosed the appraised value of husband's home. Attachments B through K listed numerous intangible assets, including husband's federal thrift savings plan, his pension, and various bank, credit union, and securities accounts. The statements for the securities accounts listed numerous stocks by company name and number of shares. The intangible assets for which values were listed on attachments B to K totaled approximately $214,000.[1] Although the statements included the market value of the majority of shares of stock listed, they also included thousands of shares of named stocks for which no value was listed. Wife offered no evidence as to the value of these stocks. Absent evidence of their value, nothing in the record compels a finding that husband failed in 1993 to disclose the $250,000 to $300,000 worth of stock he later testified he had owned at that time. Wife complains that the trial court erroneously "conflated the value of [husband's] stock with the

---

[1] The total value of the assets listed on those attachments, close to $250,000, included the full value of husband's pension, listed as $103,472.55 as of May 29, 1993. However, as wife's Exhibit 2 makes clear, husband's first wife was awarded "one-half" of that pension, "when it becomes due and payable," in her 1990 divorce from husband. That pension was listed as having a value of $62,800 in 1990. Wife acknowledged by signing the premarital agreement "that she has read, is familiar with and understands [h]usband's obligations under a prior divorce decree." Thus, the evidence, viewed in the light most favorable to husband, proves wife had notice that husband's share of the pension was lower than the amount listed by about $31,400.

value of his total assets," but given the trial court's finding that husband disclosed "*over* $250,000 of his assets" (emphasis added), the record does not compel the conclusion that the trial court erred.

Wife also contends that husband failed to disclose to her *any* stocks in a Wheat First Securities account in his name ending in the digits 7850 (hereinafter Wheat account 7850). The trial court, which heard both parties testify, "not[ed] that [while] certain inconsistencies may exist in the exact numbers or accounts," it was "satisfied that [h]usband made a reasonable effort to provide a fair representation of his finances when the [a]greement was executed." Although Wheat account 7850, and a second Wheat First account ending in the digits 6975 (hereinafter Wheat account 6975), existed in 1990 when husband and his first wife divorced, husband testified that during the 1990s, he transferred some of his holdings from Wheat First to another brokerage company. The attachments to the premarital agreement show that, in 1993 prior to the parties' marriage, husband had stocks in Wheat account 6975 and had additional stocks in an account with Dean Witter. Thus, the evidence, viewed in the light most favorable to husband, supports a finding that husband no longer owned Wheat account 7850 when the parties executed the premarital agreement and disclosed to wife all the stocks he owned at that time.

In sum, the trial court's finding that husband's "disclos[ure of] over $250,000 of his assets" provided "an accurate representation of his net worth at the time of the [a]greement's execution" was not plainly wrong.

### 2. Unconscionability

The agreement would be unenforceable under Code § 20-151(A)(2) only if wife proved *both* that she was not provided a fair and reasonable disclosure of the property or financial obligations of the other party *and* that the agreement was unconscionable. Because the evidence

supports the trial court's ruling that wife received a fair and reasonable disclosure of husband's property, Code § 20-151 does not render the agreement unenforceable.[2]

## B. ESTOPPEL & CONTRACT DEFENSES

"Estoppel is the [equitable] doctrine by which a 'party is prevented by his own acts from claiming a right to [the] detriment of [the] other party who was entitled to rely on such conduct and has acted accordingly.'" Webb v. Webb, 16 Va. App. 486, 494, 431 S.E.2d 55, 61 (1993) (quoting Black's Law Dictionary 551 (6th ed. 1990)). "The elements necessary to establish equitable estoppel are (1) a representation, (2) reliance, (3) change of position, and (4) detriment,

---

[2] In any event, the evidence supports the trial court's ruling that the agreement was not unconscionable. Whether a premarital agreement is unconscionable is to be determined as of *the time of its execution*. Code § 20-151(A)(2). "Recitations in the agreement shall create a prima facie presumption that they are factually correct." Code § 20-151(B). A party alleging unconscionability "must prove both 1) a gross disparity existed in the division of assets and 2) overreaching or oppressive influences." Galloway v. Galloway, 47 Va. App. 83, 92, 622 S.E.2d 267, 271 (2005). "If inadequacy of price or inequality in value are the only indicia of unconscionability, the case must be extreme to justify equitable relief. A person may legally agree to make a partial gift of his or her property or may legally make a bad bargain." Derby v. Derby, 8 Va. App. 19, 28, 378 S.E.2d 74, 78-79 (1989).

Here, the parties were mature, college-educated adults at the time of their marriage. Although husband was a physician and had been in the work force longer than wife, each was gainfully employed. Husband, who had been through a divorce and equitable distribution three years earlier, testified he would not marry wife without a premarital agreement to safeguard his separate assets. Husband owned his own home, had significant intangible assets at the time of the marriage, and had significantly greater earning potential than wife, whereas wife, although employed as a college instructor, had student loan debt and negligible separate assets at the time of the marriage. Thus, the record supports a finding that the agreement did not provide for a gross disparity in the division of any marital assets that might come into existence during their union. The agreement, in fact, expressly contemplated that its application to their marital union might not result in *any* marital property.

The evidence also fails to establish overreaching or oppressive influences. The agreement itself provides that each of the parties had "an opportunity to consult with legal counsel as to his or her respective legal rights arising from the marital relationship" and that the agreement was "freely and voluntarily entered into . . . without coercion, constraint, or intimidation." The trial court rejected most of wife's evidence concerning the events surrounding the execution of the agreement and credited the testimony of husband and the notary who witnessed wife's signature that no coercion was involved.

The holding in Sims, 55 Va. App. at 344-45, 685 S.E.2d at 871, relied upon by wife, is readily distinguishable because it involved a marital rather than a pre-marital agreement, entered into by spouses who had been married for almost forty years.

- 5 -

and the party who relies upon estoppel must prove each element by clear, precise, and unequivocal evidence." Princess Anne Hills v. Susan Constant Real Estate, 243 Va. 53, 59, 413 S.E.2d 599, 603 (1992) (citation omitted).

Wife contends estoppel applies to prevent husband from asserting the validity of the agreement because she relied on his statement to her that he had torn it up and that "she was taken care of." The relevant evidence on this issue, viewed most favorably to husband and in light of the trial court's findings, is that although husband gave wife one of three original copies of the agreement they both executed, she did not have one after the parties married. Wife repeatedly asked husband for a copy of the premarital agreement, but husband made various excuses so as to avoid giving her a copy. About two years after the marriage, wife sought the advice of an attorney concerning her options for obtaining the agreement. When wife demanded husband give her a copy after she had met with the attorney, husband said he had torn it up and that "it wasn't for [wife] anyway." Wife "declined to follow up for fear of provoking a divorce," and she did not return to the attorney for additional advice.

We agree with the trial court that wife failed to establish, by clear and convincing evidence, sufficient facts to estop husband from relying on the agreement. Although husband apparently lied to wife when he said he had torn up the agreement, the trial court did not find wife proved that she relied on his misrepresentation. It held that *if* she relied upon that misrepresentation to conclude the agreement was no longer in effect, her reliance was unreasonable. The evidence supports this result because wife was charged with knowledge of both the applicable statute and the terms of the agreement itself. Code § 20-153 provides that "[a]fter marriage, a premarital agreement may be amended or revoked only by a written agreement signed by the parties." The agreement, similarly, provides that "[n]o amendment to or change in this agreement shall be effective unless made in a separate written instrument executed

by the parties hereto," and it also references the fact that by signing it, the parties "agreed to accept the provisions of this agreement pursuant to Virginia Code Section 20-148." See, e.g., First Va. Bank-Colonial v. Masri, 245 Va. 461, 463, 428 S.E.2d 903, 904 (1993) (holding a party signing a contract is charged with knowledge of its contents). The evidence, viewed in the light most favorable to husband, establishes that wife received at least one copy of the agreement after she executed three originals in the presence of the notary. Further, the trial court found husband made no representations regarding the legal effect of his supposed destruction of the agreement and that wife could readily have obtained legal advice about the effect of his supposed actions. Although wife argues she had no duty to consult counsel and that her failure to do so should not prevent her from invoking estoppel, the facts establish that wife did, in fact, consult counsel about the agreement but then failed, when husband told her shortly thereafter that he had torn it up, to return to counsel for additional advice about the legal consequences of husband's actions.

Wife also contends the trial court erred in holding husband's statement that he tore up the agreement did not constitute an abandonment or repudiation of it. The language of Code § 20-153 that such an agreement "may be amended or revoked *only* by a written agreement signed by the parties" (emphasis added), coupled with the failure of the Act to reference repudiation or abandonment, constitutes the General Assembly's rejection of the notion that either of these contract principles might apply to prevent a party to a premarital agreement from being bound by it. See Smith v. Smith, 19 Va. App. 155, 157 n.1, 499 S.E.2d 506, 507 n.1 (1994) (citing Hurt v. Hurt, 16 Va. App. 792, 433 S.E.2d 493 (1993), a pre-Act case involving *repudiation* of a premarital contract prior to the marriage, as being a "*revocation*" case (emphasis added)). Thus, we hold the trial court did not err in concluding husband's actions did not constitute a binding abandonment or repudiation of the agreement because the parties themselves could modify or invalidate the agreement only by written amendment or revocation.

Wife also contends the trial court erred in holding she was unable to establish detrimental reliance because, although she testified she would have obtained an advanced degree and worked to secure her own personal financial future and retirement, she had no viable means to achieve these goals. Because we hold wife failed to establish she was justified in relying on husband's statements, we need not consider whether the trial court erred in finding she was unable to change her position as a result.

Wife contends that, even if husband is not estopped from asserting the agreement as to all assets, he should be estopped from claiming it governs ownership of the Brentwood property and husband's stocks because she took his last name after the marriage in reliance on his statement that he would title these properties jointly if she did so. However, wife did not articulate precisely this argument to the trial court. Her argument there, instead, was that when she asked husband after the marriage to title the Brentwood residence in the names of both parties, as she claimed they had discussed before the marriage, he said he could not do so until she changed her name. She did not allege that husband intended for wife to change her name in reliance on this representation. See, e.g., Trayer v. Bristol Parking Inc., 198 Va. 595, 604-05, 95 S.E.2d 224, 231 (1956) (holding false representation or concealment of material fact "must have been made with the intention that the other party should act upon it"). The evidence supported the trial court's finding that husband intended instead merely to deter wife from continuing to "nag" him about titling the residence jointly. As to ownership of the stock, wife claimed merely that husband said he could not put her name on it because doing so would impair his ability to trade it without her signature. The trial court found, in keeping with the arguments wife made to it, that husband in fact made various excuses and misrepresentations in response to wife's repeated requests to have these properties jointly titled, but it held wife had not proved detrimental reliance and change of position based on what it termed "[h]usband's flimsy excuses on these points," holding "it is

- 8 -

questionable as to whether [w]ife actually accepted these excuses as valid." The evidence, viewed in the light most favorable to husband, supports the trial court's finding that wife failed to prove by clear and convincing evidence that she changed her name in reliance on husband's statements. Thus, we hold the trial court did not err in concluding that husband was estopped from asserting the agreement as preventing equitable distribution of the Brentwood residence and stocks.

## C. DISCOVERY

Wife contends the trial court's suspension of discovery in favor of requiring the parties to submit schedules of separate and marital property substantially impaired her ability to litigate her case, including her ability to show husband did not provide her with a fair and reasonable disclosure of his assets. Thus, she contends the ruling was reversible error. We hold wife preserved only a portion of this claim for appeal and that, to the extent the issue is preserved, no reversible error occurred.

"Rule 4:1(b)(1) states that with certain exceptions '[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party.'" Nizan v. Wells Fargo Bank Minn. Nat'l Assoc., 274 Va. 481, 500, 650 S.E.2d 497, 507 (2007) (quoting Rule 4:1(b)(1)). However, that rule also provides that the court may limit "'the frequency or extent of' discovery methods 'if it determines[, *inter alia*,] that: . . . (iii) the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation.'" Id. (quoting Rule 4:1(b)(1)). "Generally, the granting or denying of discovery is a matter within the discretion of the [circuit] court and will not be reversed on appeal unless 'the action taken was improvident and affected substantial

rights.'" O'Brian v. Langley Sch., 256 Va. 547, 552, 507 S.E.2d 363, 366 (1998) (quoting Rakes v. Fulcher, 210 Va. 542, 546, 172 S.E.2d 751, 755 (1970)).

Rule 5A:18 provides that, to preserve an issue for appeal, "an objection must be timely made and the grounds stated with specificity."[3] Marlowe v. Commonwealth, 2 Va. App. 619, 621, 347 S.E.2d 167, 168 (1986). "The purpose of Rule 5A:18 is to avoid unnecessary appeals, reversals, and mistrials by requiring litigants to inform the trial judge of the action complained of so that the judge has the opportunity to consider the issue intelligently and take timely corrective action." Robinson v. Commonwealth, 13 Va. App. 574, 576, 413 S.E.2d 885, 886 (1992). Further, settled principles provide a party moving the court to take some action bears the burden of obtaining a ruling on that motion. When the party fails to do so, "there is no ruling for us to review." Fisher v. Commonwealth, 16 Va. App. 447, 454-55, 431 S.E.2d 886, 890 (1993).

Here, wife moved the court to compel husband to answer her first set of interrogatories but failed to obtain a ruling on that motion before the court held the agreement was enforceable under Code § 20-151. As part of that ruling, the court determined husband made a fair and reasonable disclosure of his assets before the parties executed the agreement. Thereafter, the only issue left for the trial court to address was the classification, valuation, and distribution of the property pursuant to the agreement. Wife objected generally to the ruling limiting the parties to verified property schedules on the ground that it deprived her of information "properly discoverable under the Rules" and "inhibit[ed] [her] ability to properly prepare for the equitable

---

[3] The trial court proceedings spanned the years 2007 to 2011. Prior to July 1, 2010, Rule 5A:18 provided, in pertinent part, that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated *together with the grounds therefor* at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." (Emphasis added). Effective July 1, 2010, the rule was amended to provide that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated *with reasonable certainty* at the time of the ruling . . . ." (Emphasis added). We hold, for purposes of the instant case, that the "specificity" requirement contained in our pre-amendment case law comports with the "reasonable certainty" requirement of the amended rule.

distribution hearing" still to be held, but she never specifically contended that it interfered with her ability to prove husband failed to make a fair and reasonable disclosure of his assets before the parties executed the agreement, an issue upon which the trial court had already ruled at that time. Thus, under the settled principles set out above, wife failed to preserve this objection for appeal.

We hold wife properly preserved her claim that limiting the parties to verified property schedules and income and expense statements deprived her of discovery for purposes of the final hearing. However, we conclude this claim is without merit. The issues remaining for resolution when the trial court made that ruling were quite narrow, covering application of the agreement to the division of a very limited amount of mostly tangible marital property and wife's entitlement to spousal support of up to $1,000. Thus, we hold the trial court's action did not adversely "affect[] substantial rights" and did not constitute an abuse of discretion.

## D. SPOUSAL SUPPORT

Husband assigns cross-error to the trial court's refusal to modify its award of *pendente lite* spousal support retroactive to the date he filed his motion for modification. We hold the trial court did not abuse its discretion in so ruling.

As the trial court found, although husband was served with notice of wife's divorce complaint and request for *pendente lite* support, he failed to file a responsive pleading, scheduled himself for elective surgery in another state at around the same time as the hearing, and failed to appear at that hearing either in person or by counsel. Subsequently, on December 21, 2007, when husband moved the court to reduce the award of *pendente lite* support from $5,000 to the $1,000 listed in the agreement, husband merely alleged the existence of the premarital agreement and failed to include a copy of it. Although he finally filed a copy of the agreement with the court about six weeks later, in February 2008, and again requested that the *pendente lite* award

- 11 -

be reduced, the record, viewed in the light most favorable to wife, indicates that husband failed to obtain a contemporaneous ruling on that motion. The record supports the trial court's finding that husband in fact "never brought on the question of whether he should be relieved of his [*pendente lite*] support obligation [of $5,000 per month] until [w]ife sought a finding of contempt for his refusal to pay in August 2008." At that time, even though the court had not yet ruled on the agreement's validity, it granted husband's motion to modify the support award prospectively, reducing the award to $1,000 per month from September 1, 2008, forward. Thus, the record supports a finding that husband could have avoided the accrual of the arrearage if he had acted in a timely fashion. On these facts, we hold the trial court did not abuse its discretion in refusing husband's request to be relieved of the arrearage.

## II.

For these reasons, we affirm the ruling of the trial court.

Affirmed.