COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick,[*] Judges Baker and Annunziata
Argued at Alexandria, Virginia


KAMRAN RAHBARAN

v.   Record No. 2700-96-4

SARA RAHBARAN
                                              OPINION BY
                                    JUDGE ROSEMARIE ANNUNZIATA
SARA RAHBARAN                            DECEMBER 23, 1997

v.   Record No. 2858-96-4

KAMRAN RAHBARAN


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                     Gerald Bruce Lee, Judge

        Fred M. Rejali for Kamran Rahbaran.

        (Manuel Trigo, Jr., on briefs), for Sara
        Rahbaran.


     Kamran Rahbaran (husband) appeals the final decree of the

trial court, contending the trial court erred by refusing to

award him the separate portion of his business, awarding Sara

Rahbaran (wife) spousal support, and refusing to order wife to

pay his attorney's fees.  Wife cross-appeals, contending the

court erred in determining child and spousal support, the

equitable distribution award, and when awarding custody of the

parties' minor children.  Husband contends the wife's appeal

should be dismissed because she filed her opening and reply

briefs without the signature of a member of the Virginia State

---

[*]On November 19, 1997, Judge Fitzpatrick succeeded Judge
Moon as chief judge.

Bar.  We agree and dismiss wife's cross-appeal.  We further affirm the trial court's decision with respect to the issues raised by husband in his appeal.

The parties were married in 1984; two children were born of the marriage.  After a period of separation, wife filed for divorce in 1995.  The report of the commissioner in chancery found that both parties had committed adultery and that the adulterous conduct on both their parts contributed to the dissolution of the marriage.  The commissioner recommended that a divorce be granted on the ground that the parties had lived separate and apart for more than one year.

In 1983, prior to the marriage, husband's father transferred $34,382.56 to him from a foreign account.  Husband used this money to open Royal Shoe, his first business.  In 1986, after the parties married, husband moved the Royal Shoe inventory to a new location and opened Kami, Inc., utilizing the Royal Shoe inventory and additional funds provided to him by his father in the amount of $79,993.  Husband's half-brother testified that their father had transferred nearly $105,000 in funds to husband. Husband did not maintain separate records of his business and personal expenses, keeping one checking account for both.

During the course of the litigation, sanctions were imposed against wife on various grounds.  Two motions for contempt she brought against husband were ruled frivolous, warranting sanctions in the amount of $750.  Wife was sanctioned an

additional $750 for making a significant misrepresentation of fact to the court. Wife also violated a court order to not remove the parties' children from the Washington area by taking them to Mexico. As a result, she was sentenced to serve one day in jail for contempt of court. Over the entire course of litigation, wife was sanctioned four times and held in contempt once.

On March 21, 1996, ruling from the bench, the court granted a divorce on the ground of the parties having lived separate and apart for one year and divided the assets and debts of the parties. The court treated Kami, Inc. as a marital asset and valued it at $158,000. The court noted that both husband and wife were guilty of adultery, but, concluding that it would be unjust to deny wife spousal support, it awarded her $28,000 per year in spousal support. Upon a motion for reconsideration, the court reduced its award of spousal support, noting that its previous figure of $28,000 per year mistakenly incorporated an earlier order of child support. The court awarded sole custody of the parties' children to the father. The parties' respective requests for payment of attorney's fees were denied. The court entered a final decree of divorce reflecting these decisions on October 18, 1996.

I.

Dismissal of Wife's Appeal

On April 18, 1996, wife's counsel, Manuel Trigo, Jr., a

3

member of the State Bar of Texas but not of the Virginia State Bar, was admitted to practice in the Circuit Court of Fairfax County pro hac vice. Wife's local counsel, Jahangir Ghobadi, moved to withdraw on May 9, 1996, citing unpaid fees. According to the record, the trial court never ruled on Ghobadi's motion to withdraw. However, only foreign counsel signed the notice of appeal and the briefs filed in this Court.

The circumstances under which foreign counsel are permitted to practice before this Court are well delineated in our jurisprudence. In the exercise of its authority to establish rules governing the admission of attorneys pro hac vice in its courts, Leis v. Flynt, 439 U.S. 438, 441-42 (1979) (per curiam), the Supreme Court of Virginia has enacted Rule 1A:4, which provides:

> An attorney from another jurisdiction may be permitted to appear in and conduct a particular case in association with a member of the Virginia State Bar, if like courtesy or privilege is extended to members of the Virginia State Bar in such other jurisdiction. The court in which the case is pending shall have full authority to deal with the resident counsel alone in all matters connected with the litigation. If it becomes necessary to serve notice or process in the case upon counsel, any notice or process served upon the associate resident counsel shall be as valid as if personally served upon the nonresident attorney.
> Except where a party conducts his own case, a pleading, or other paper required to be served (whether relating to discovery or otherwise) shall be invalid unless it is signed by a member of the Virginia State Bar.

It is uncontested that wife's papers were not "signed by a

4

member of the Virginia State Bar" as required by Rule 1A:4. Ghobadi's name does not appear on the notice of appeal, opening brief, or reply brief. Under Rule 1A:4, therefore, wife's briefs are "invalid" because they were not signed by a member of the Virginia State Bar. The question before us is whether the failure to have a member of the Virginia State Bar act as local counsel and sign the notice of appeal and briefs justifies dismissal of the appeal. This is an issue of first impression in Virginia.

The Rules of this Court which husband cites in support of his argument do not expressly provide that dismissal of an appeal shall follow from foreign counsel's failure to associate and appear with local counsel.[1] Our Rules do not specifically address the effect on court proceedings of Rule 1A:4 and its declaration rendering "invalid" all papers required to be served which do not contain the signature of local counsel. It would nonetheless follow logically and from the clear language of the Rule that an "invalid" document is, necessarily, a legally

_____

[1] Rules 5A:20, 5A:21, and 5A:22 require the signature of at least one counsel on the opening brief of appellant, the brief of appellee, and the reply brief, respectively. "Counsel" is defined in Rule 1:5 to include "a partnership, a professional corporation or an association of members of the Virginia State Bar practicing under a firm name." See also Rule 5A:1(4) (adopting definition of counsel in Rule 1:5).

Rule 5A:26 states: "If neither party has filed a brief in compliance with these Rules, the Court of Appeals may dismiss the appeal. If one party has but the other has not filed such a brief, the party in default will not be heard orally, except for good cause shown." Under the dictate of Rule 5A:26, wife was not permitted to be heard orally in support of her appeal.

ineffective predicate for a court proceeding. We have held that, in the exercise of our discretion, we may dismiss an appeal in which no opening brief has been filed or in which the opening brief does not comply with our rules. See Uninsured Employer's Fund v. Coyle, 22 Va. App. 157, 159, 468 S.E.2d 145, 146 (1996).

The failure to have local counsel's signature on the notice of appeal and the briefs implicates the fundamental supervisory power of this Court over the practice of law in this forum. "The right to practice law in Virginia is governed by statute as supplemented by the Rules of the Supreme Court of Virginia." Brown v. Supreme Court, 359 F. Supp. 549, 553 (E.D. Va. 1973), aff'd, 414 U.S. 1034 (1973) (mem.); see also Horne v. Bridwell, 193 Va. 381, 384, 68 S.E.2d 535, 537 (1952). While the matter is addressed by rule and statute, this Court has the inherent power, apart from statute or rule, to inquire into the conduct of any person to determine whether that individual "is usurping the functions of an officer of the court and illegally engaging in the practice of law and to put an end to such unauthorized practice where found to exist." Richmond Ass'n of Credit Men v. Bar Association, 167 Va. 327, 335-36, 189 S.E. 153, 157 (1937); see also Blodinger v. Broker's Title, Inc., 224 Va. 201, 205, 294 S.E.2d 876, 878 (1982) (citing Richmond Ass'n of Credit Men, 167 Va. at 335, 189 S.E. at 157). Our response to the contention that wife's appeal should be dismissed is necessarily viewed in

the context of a violation of Virginia law.[2]

Thus, while we recognize that "there is no jurisdictional requirement that a litigant file a brief," Smith v. Transit Co., 206 Va. 951, 953, 147 S.E.2d 110, 112 (1966), we are persuaded that under the dictate of our rules, together with that of Rule 1A:4 and Virginia's regulations governing the unauthorized practice of law in our courts, wife's appeal must be dismissed.[3]

## II.

### The Equitable Distribution of Husband's Business

Husband argues on appeal that the trial court should have treated as separate property a portion of his business, Kami, Inc., on the ground that its predecessor was partially funded by

---

[2] Wife argues that Trigo "received permission of the trial court to appear pro hac vice[] to pursue an appeal on [w]ife's behalf."  Code § 54.1-3903 provides, however, that "an attorney who has qualified before a court other than the Supreme Court shall be qualified to practice only in the court which administered his oath."  Thus, Trigo's pro hac vice appearance in the circuit court does not qualify him to practice in this Court.

Wife also argues that Trigo was in association with local counsel because Ghobadi was never granted leave to withdraw.  We are not persuaded that Trigo's tenuous link with Ghobadi, if any, constitutes "association with a member of the Virginia State Bar."

[3] Wife contends that husband cannot be heard to complain that her counsel is not admitted to practice in Virginia because husband accepted the benefits of Trigo's participation in joint motions for extension of time.  Wife misunderstands the nature of the Rules.  The issue raised by the violation of the Rules of Court in this instance is not whether husband was prejudiced; the issue is the judicial system's obligation and authority to maintain control of its courts and prevent the unauthorized practice of law.  Husband's participation in joint extensions of time with Trigo cannot divest this Court of its responsibility or authority to enforce its Rules and the standards set by Virginia for the practice of law.

7

his father in 1983 before the marriage and that, after the marriage, it was further funded by his father by monetary gift to husband in 1986. A decision regarding equitable distribution rests within the sound discretion of the trial court and will not be reversed unless it is plainly wrong or without evidence to support it. McDavid v. McDavid, 19 Va. App. 406, 407-08, 451 S.E.2d 713, 715 (1994) (citing Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990)).

The trial court held that in light of the abundant evidence of husband's commingling of the 1983 transfer funds with marital funds, "the funds from the 1983 transfer were transmuted into marital property due to its commingling with marital funds." On appeal, husband contends that this ruling was "a clear misapplication of the current state of the law which allows for the tracing of commingled funds." Wife responds that the 1983 transfer funds were properly deemed transmuted because husband produced no evidence that "the money from the 1983 wire transfer was kept separately."

The General Assembly adopted the concept of hybrid property in 1990 and established rules to govern its classification and distribution upon divorce. Under the amended statute, Code § 20-107.3(A)(3) provides procedures for classifying property as part marital and part separate. As amended, Code § 20-107.3(A) provides in relevant part:

> 1. Separate property is (i) all property, real and personal, acquired by either party before the marriage; (ii) all

8

property acquired during the marriage by bequest, devise, descent, survivorship or gift from a source other than the other party; (iii) all property acquired during the marriage in exchange for or from the proceeds of sale of separate property, provided that such property acquired during the marriage is maintained as separate property; and (iv) that part of any property classified as separate pursuant to subdivision A 3. . . .

\* \* \* \* \* \* \*

3. The court shall classify property as part marital property and part separate property as follows:

\* \* \* \* \* \* \*

e. When marital property and separate property are commingled into newly acquired property resulting in the loss of identity of the contributing properties, the commingled property shall be deemed transmuted to marital property. However, to the extent the contributed property is retraceable by a preponderance of the evidence and was not a gift, the contributed property shall retain its original classification.

This case presents the issue of the operation of the transmutation and tracing provisions of the amended statute. In earlier cases, we briefly addressed the operation of these provisions. In Rowe v. Rowe, 24 Va. App. 123, 480 S.E.2d 760 (1997), we applied the tracing provisions of the amended statute. In Rowe, the parties moved into husband's separately owned home at the time of the marriage. Id. at 132, 480 S.E.2d at 764. Four years later, husband sold his separately owned home and invested the $82,000 proceeds in a new, jointly-titled home. Id. This Court held that husband's evidence that he had invested the

9

$82,000 into the new home "is sufficient for purposes of Code § 20-107.3(A)(3)(d)[4] to retrace the property claimed as separate by husband." Id. at 136, 480 S.E.2d at 766. Analogously, in Mann v. Mann, 22 Va. App. 459, 463-65, 470 S.E.2d 605, 606-07 (1996), we applied the "conceptually equivalent" pension fund tracing provisions of Code § 20-107.3(A)(2) and (A)(3)(b) and held that the trial court "erred in failing to classify as separate the income earned passively by husband's separate contributions," despite the fact that the marital and separate contributions were contained in a single pension fund. Id. at 465, 470 S.E.2d at 608.

Despite these rulings, we have yet to squarely hold that tracing under the hybrid property provisions of Code § 20-107.3(A)(1)(iv) and (A)(3) does not require, as did prior law, that a party segregate property claimed to be separate. See, e.g., Smoot v. Smoot, 233 Va. App. 435, 441, 357 S.E.2d 728, 731 (1987) (If "a spouse fails to segregate and instead, commingles, separate property with marital property, the chancellor must classify the commingled property as marital property subject to equitable distribution."). We now hold, contrary to wife's contention, that tracing of the separate portion of hybrid property does not require the segregation of

---

[4] Code § 20-107(A)(3)(d) and Code § 20-107(A)(3)(e) are parallel provisions addressing, respectively, commingling "by contributing one category of property to another," and commingling "into newly acquired property."

the separate portion.  See Loeb v. Loeb, 324 S.E.2d 33, 39 (N.C. App. 1985) ("Moreover, it is true that the wife's mere act of depositing her cash gifts . . . in the parties' joint bank account would not have deprived them of their 'separate property' status . . . if she had been able to trace the proceeds.").

The tracing process under Code § 20-107.3(A)(1)(iii) dictates that property acquired in exchange for separate property be "maintained as separate property," but the tracing process for hybrid property under Code § 20-107.3(A)(1)(iv) and (A)(3) contains no such requirement.  See Marion v. Marion, 11 Va. App. 659, 665, 401 S.E.2d 432, 436 (1991) (citing Code § 20-107.3(A)(1)(iii) as the source of the segregation requirement).  Indeed, a segregation requirement makes little sense in the context of the statutory scheme.  Code § 20-107.3(A)(3) addresses hybrid property, that is, property which is by definition part marital and part separate.  The concept of hybrid property presupposes that separate property has not been segregated but, rather, combined with marital property.

Furthermore, Code § 20-107.3(A)(3)(d)-(f) provides that tracing of hybrid property is only performed after separate and marital property have been commingled by contribution of one category to another, acquisition of new property, or retitling of property in the names of both parties.  Construing the statute to contain a segregation requirement would make tracing a classic Catch 22: the statute would only allow tracing of the separate

11

portion of hybrid property if the property were commingled, but commingling would violate the segregation requirement and prevent tracing.

We reject wife's argument that husband is not entitled to tracing because he did not keep the wire transfer funds separate. The absence of a segregation requirement, however, does not mean that contributions of separate property to the marriage are automatically classified as separate upon divorce. This Court has not yet established standards for tracing under the amended statute. On this issue, we are guided by both the language of the statute and principles developed in our sister states.

In order to trace the separate portion of hybrid property, a party must prove that the claimed separate portion is identifiably derived from a separate asset. This process involves two steps: a party must (1) establish the identity of a portion of hybrid property and (2) directly trace that portion to a separate asset. Code § 20-107.3(A)(3)(d)-(f).

If, however, separate property is contributed to marital property, contributed to the acquisition of new property, or retitled in the names of both parties, and suffers a "loss of identity," the commingled separate property is transmuted to marital property. Code § 20-107.3(A)(3)(d)-(f). In other words, if a party "chooses to commingle marital and non-marital funds to the point that direct tracing is impossible," the claimed separate property loses its separate status. Melrod v. Melrod,

12

574 A.2d 1, 5 (Md. App. 1990). Even if a party can prove that some part of an asset is separate, if the court cannot determine the separate amount, the "unknown amount contributed from the separate source transmutes by commingling and becomes marital property." Brett R. Turner, Equitable Distribution of Property 268 (1994); see In re Marriage of Patrick, 599 N.E.2d 117, 123 (Ill. App. 1992) (holding separate portion of hybrid property transmuted to marital property because party was unable to prove the value of his separate contribution); Melrod, 574 A.2d at 4 ("[I]nability to trace property acquired during the marriage directly to a non-marital source simply means that all property so acquired was marital property."); Loeb, 324 S.E.2d at 39 (holding separate portion of hybrid property transmuted to marital property because party was "unable to state the value of her alleged 'separate property'"). One commentator has summarized these rules succinctly: "separate property does not become untraceable merely because it is mixed with marital property in the same asset. As long as the respective marital and separate contribution to the new asset can be identified, the court can compute the ratio and trace both interests." Turner, supra, at 266 n.591.

Having identified the relevant law, we examine husband's claim that the 1983 wire transfer funds may be traced. We are guided by the basic principle that "property acquired during the marriage is presumed to be marital and property acquired before

13

marriage is presumed to be separate." <u>Barnes v. Barnes</u>, 16 Va. App. 98, 104, 428 S.E.2d 294, 299 (1993). As a starting point, therefore, the 1983 wire transfer is presumed to be husband's separate property.

Husband used the funds from the 1983 transfer to start his first business, Royal Shoe. Husband testified, however, that he freely commingled money from his business with his personal funds. The wire transfer funds were also commingled with marital funds in starting Kami, Inc. after the marriage began. Under Code § 20-107.3(A)(3)(d) and (e), contribution of separate property to the marital estate, as well as commingling of separate and marital properties into newly acquired property, transmutes the separate property into marital property unless husband, as the party seeking to invoke the exception to the general rule of transmutation, proves that "the contributed property is retraceable by a preponderance of the evidence." Code § 20-107.3(A)(3)(d) and (e).

Husband fails to establish that a portion of Kami, Inc. is traceable to the 1983 funds transfer. Husband paid both personal and business expenses from his business checking account, and maintained a single credit card for both business and personal use. According to husband, he paid "everything" out of his business account. The record does not establish that any funds in Royal Shoe and Kami, Inc. are identifiable as funds from the 1983 wire transfer.

14

With regard to the 1986 transfer, we find that the evidence fails to support husband's contention that the 1986 wire transfer funds were a "gift from a source other than the other party" and, thus, separate property. Code § 20-107.3(A)(1)(ii). "A person who claims ownership to property by gift must establish by clear and convincing evidence the elements of donative intent and actual or constructive delivery." Dean v. Dean, 8 Va. App. 143, 146, 379 S.E.2d 742, 744 (1989) (citing Rust v. Phillips, 208 Va. 573, 578, 159 S.E.2d 628, 632 (1968)). "In the case of a gift to one of the spouses, if there is credible evidence presented to show that the property was intended by the donor to be the separate property of one of the spouses, the presumption [of marital property] is overcome, and the burden shifts to the party seeking to have the property classified as marital to show a contrary intent on the part of the donor." Stainback v. Stainback, 11 Va. App. 13, 17-18, 396 S.E.2d 686, 689 (1990).

Husband does not point to any evidence in the record to establish that his father intended the wire transfer as a gift rather than a loan or an investment or that his father intended the wire transfer funds to be treated as separate property. Husband testified that he received loans and investment funds from his family and wife's family. Husband's brother characterized their father's wire transfers to husband as investments. Furthermore, husband's brother testified that he had received similar funds transfers which he described as loans.

15

When asked on direct examination if he had returned the money from the 1986 wire transfer to his father, husband answered, "No, I wasn't able to." From this evidence, the trial court could reasonably infer that the 1986 wire transfer was intended as a loan or investment. This evidence is not contradicted by any evidence of donative intent.

In short, no evidence proved that a portion of Kami, Inc., as it existed at the time of the equitable distribution hearing, was attributable to the 1983 or 1986 transfer funds or that the 1986 funds transfer was intended as a gift to husband separate from the marital estate. We hold that the trial court did not err in finding that the husband failed to present sufficient evidence to prove that the wire transfer funds were retraceable to his separate property.

III.

Spousal Support

In awarding wife spousal support, notwithstanding evidence of her adultery, the trial court stated:

> I am mindful of the fact that there is evidence that she has been found guilty of adultery and I'm also mindful of the fact the husband's been found guilty of adultery and the Code allows the Court to consider not awarding spousal support but it seems to me that it would be unjust under the circumstances to punish her and to provide her with no support given the length of the marriage and the contributions she has made and the lifestyle that she was afforded during the course of the marriage and so I will award some spousal support.

16

The court awarded wife $28,000 per year in spousal support, later amending its award to $18,000 per year. Husband challenges both the propriety and the amount of this award. We find no abuse in the trial court's exercise of discretion in making this award.

A party who has committed adultery will not be awarded spousal support unless the trial court finds by clear and convincing evidence that denial of support would constitute a "manifest injustice, based on the respective degrees of fault during the marriage and the relative economic circumstances of the parties." Code § 20-107.1; Barnes v. Barnes, 16 Va. App. 98, 102, 428 S.E.2d 294, 298 (1993). The trial court's decision to award spousal support to a party despite his or her adultery will not be disturbed on appeal unless it is plainly wrong or without evidence to support it. Williams v. Williams, 14 Va. App. 217, 219, 415 S.E.2d 252, 253 (1992).

The trial court's finding that denial of spousal support would be unjust to wife is supported in the record. The trial court determined that the parties were both at fault in the dissolution of the marriage but that economic factors would make the denial of spousal support unjust to wife. See Bandas v. Bandas, 16 Va. App. 427, 433, 430 S.E.2d 706, 709 (1993) (upholding a finding of manifest injustice where both parties were guilty of adultery where the finder of fact had considered the disparity of the parties' non-marital assets, the eight and one-half year length of the marriage, and the fact that wife's

adultery arose partly from husband's incarceration during the marriage).

In finding the denial of an award would be unjust, the trial court considered, inter alia, the adulterous conduct of both parties, the ten-year length of the marriage, wife's contributions to the marriage, the lifestyle of the parties during the marriage, and the parties' relative economic resources and needs. Furthermore, contrary to husband's contention, the court did not find, nor does the record establish, that wife was living with another man and that the spousal award, for that reason, would be inappropriate. In short, we find no abuse in discretion in the trial court's determination that wife was entitled to receive spousal support.

Husband also contends the trial court abused its discretion in determining the amount of support to be awarded. The trial court's determination of the amount of an award of spousal support will not be disturbed on appeal unless the decision is plainly wrong or without evidence to support it. Moreno v. Moreno, 24 Va. App. 190, 194-95, 480 S.E.2d 792, 794 (1997) (citing Gamble v. Gamble, 14 Va. App. 558, 574, 421 S.E.2d 635, 644 (1992)). In determining the amount of spousal support to be awarded, the trial court applied the relevant statutory factors set forth in Code § 20-107.1, including earning capacity, financial resources, education and training, the standard of living during the marriage, and the duration of the marriage.

18

The trial court explicitly noted that the parties enjoyed a lavish lifestyle for ten years and considered the wife's current medical disability and its effect on her ability to work. With respect to the wife's employability, the court further stated that it had considered the testimony of husband's vocation and rehabilitation expert that wife could earn $20,000 per year. Husband earned $120,000 per year. Based on all the relevant evidence, the court concluded that $28,000 per year was a reasonable amount of spousal support, given the needs and income of both parties. After a motion for reconsideration, the court reduced the award to $18,000 per year because it had made a mathematical error; the $28,000 figure mistakenly incorporated an earlier order of child support. We find the trial court did not abuse its discretion in making its spousal support award.

IV.

Attorney's Fees

Husband contends that the court erred in denying his request for attorney's fees on the ground that wife's conduct during the litigation was egregious, specifically noting wife's adultery, her "exaggerated claims during the equitable distribution hearing,"[5] and the number of times wife was sanctioned for

_____

[5]During the trial, wife's attorney needed to take a witness out of turn and agreed to compensate husband for any extra expert fees incurred as a result of the delay. Husband cites this agreement as a further basis for an award of attorney's fees to him. He cites no authority in support of this position, and we find none.

19

misconduct by the court. A trial court's denial of attorney's fees is reviewed only for abuse of discretion. Head v. Head, 24 Va. App. 166, 181, 480 S.E.2d 780, 788 (1997). This case was hotly contested between the parties, and the trial court found that both parties had spent over $100,000 in attorney's fees. While it is true, as husband argues, that wife filed false charges against him, violated a court order, and pursued frivolous motions, the record also makes clear that wife was sanctioned four times and that she spent one day in jail for contempt of court. In one of the orders sanctioning wife, the court required wife to pay attorney's fees to husband's counsel. In another, the court required both wife and her counsel to pay sanctions. A third order required that wife pay sanctions but does not disclose whether payment was to the court or to counsel. After discussing the conduct of the parties and the amount of money spent in litigating the divorce action, and upon considering all the equities in the case, the trial court denied attorney's fees to each party. We find no abuse of discretion with respect to an award of attorney's fees.

For the reasons set forth in this opinion, we dismiss wife's cross-appeal and affirm the decision of the trial court.

Record No. 2700-96-4, affirmed.
Record No. 2858-96-4, dismissed.

20