COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, McClanahan and Senior Judge Bumgardner
Argued at Alexandria, Virginia


UDAY PATEL

                                                    MEMORANDUM OPINION[*] BY
v.       Record No. 2363-05-4                JUDGE ELIZABETH A. McCLANAHAN
                                                         SEPTEMBER 12, 2006
LAVINA PATEL


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Dennis J. Smith, Judge

Pamela L. Cave (Cave Family Law, on briefs), for appellant.

Yarek M. Smagowski for appellee.


        Uday Patel (husband) appeals from a final decree of divorce from Lavina Patel (wife).

He contends the trial court erred in:  (a) classifying a portion of the investment in the residence,

four bank accounts, and an investment account, as marital property; (b) valuing two of those

bank accounts as of the separation date, rather than the hearing date; and (c) awarding attorney's

fees to wife.  For the reasons that follow, we affirm the trial court.

## I.  BACKGROUND

        In reviewing the trial court's decision on appeal, we view the evidence in the light most

favorable to wife, the prevailing party, granting her the benefit of any reasonable inferences.

Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003).

        The parties married in 1999 and had one daughter, born in 2000.  Husband was also the

father of a teenage daughter from a previous marriage.  The parties separated in August 2003 and

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

filed for divorce later that year.[1]  In January 2005, the trial court conducted a three-day *ore tenus* hearing on equitable distribution of the marital estate.  In the final divorce decree, the court awarded wife a divorce based on husband's "cruelty, [his] causing reasonable apprehension [of] bodily hurt, and [his] desertion and abandonment of the marriage"; awarded wife spousal support and child support, on behalf of the parties' minor daughter; ordered the equitable distribution of the marital property, including a lump sum payment to wife; and awarded wife attorney's fees in the sum of $35,000.

The trial court classified the marital residence, which the parties acquired in June 2003, as both separate and marital property.  This was based, in part, upon the court's finding that a portion of the down payment on the home, in the sum of $182,125, was marital property.[2]

The trial court also classified and valued four Bank of America accounts, identified as accounts 3734, 7726, 8503, and 9089; and a T. Rowe Price investment account.  It is undisputed that at least one of the bank accounts was the direct source of the portion of the down payment on the marital residence found by the trial court to be marital property.  The evidence further showed that in those five accounts, over the course of the parties' four-year marriage, some if not all of husband's pre-marital financial assets totaling about $302,000 were commingled with the parties' marital funds, consisting primarily of husband's net wages totaling over $600,000.  Also during those four years, husband conducted hundreds of inter-account transactions among those accounts.  The court ruled that each of the five accounts was marital property upon finding

---

[1] Husband filed a bill of complaint for divorce.  Wife then filed a cross-bill for divorce.

[2] The court further found the balance of the down payment represented part of husband's separate investment in the home from pre-marital assets.  The court ultimately awarded husband eighty-one percent of the equity in the home and wife the remaining nineteen percent, after applying the factors required under Code § 20-107.3.

husband did not present sufficient evidence to trace funds in the accounts to his pre-marital assets.

In addition, as to account 3734, titled to husband and his teenage daughter, the trial court found that the account was in husband's possession and control; and that its value was $16,742.40, the value at the time of the parties' separation. The court explained the value of the account at the time of the hearing was $1,958.38, but husband failed to present sufficient evidence "to account for the post-separation use of these funds as ordinary living expenses." Similarly, the court found that account 8503, titled to husband and his father, was in husband's possession and control; that its value was $48,147.26, the value at the time of separation; that its value at the time of the hearing was $17,789.64; and that husband also failed to properly account for the post-separation use of those funds.

## II. ANALYSIS

Husband raises six issues on appeal. Five issues relate to the trial court's equitable distribution of the marital estate, and one issue relates to the award of attorney's fees. Challenging the equitable distribution award, husband contends the trial court erred by: (1) finding a portion of the down payment on the marital residence was marital property, rather than his separate property; (2) finding bank accounts 8503 and 9089 were marital property, rather than his and his father's separate property; (3) finding bank accounts 3734 and 7726 were marital property, rather than his and his teenage daughter's separate property; (4) valuing bank accounts 3734 and 8503 as of the separation date, rather than the hearing date; and (5) finding the T. Rowe Price investment account was marital property, rather than part marital and part his separate property. As to issue six, husband contends the trial court abused its discretion in awarding attorney's fees to wife.

A.  Waiver

Wife contends husband's argument as to issue one, regarding classification of the down payment on the marital residence, is waived pursuant to Rule 5A:18.  We agree with wife that husband's pleading entitled "Objections to Final Decree of Divorce" does not contain an objection to the trial court's finding that $182,125 of the down payment was marital property based upon husband's assertion that all of the down payment was derived from husband's separate pre-marital assets.  However, we conclude husband preserved the issue for appeal in his written argument supporting his proposed equitable distribution schedule, which was submitted to the court post-trial at the court's direction, in lieu of oral argument.  See Kaufman v. Kaufman, 12 Va. App. 1200, 1204, 409 S.E.2d 1, 3 (1991); cf. Lee v. Lee, 12 Va. App. 512, 515, 404 S.E.2d 736, 738 (1991).

Husband's argument as to issue five, challenging the trial court's finding that the T. Rowe Price investment account was marital property, is waived pursuant to Rule 5A:18.  Rule 5A:18 states, "No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice."  "Under Rule 5A:18, a specific argument must be made to the trial court at the appropriate time, or the allegation of error will not be considered on appeal."  Widdifield v. Commonwealth, 43 Va. App. 559, 563, 600 S.E.2d 159, 161 (2004) (en banc); see also Code § 8.01-384(A).

Husband did not assert his argument regarding the classification of the T. Rowe Price investment account in his written argument to the trial court, nor did he object to the finding in his written "Objections to Final Decree of Divorce."  Apart from his reference to these two written documents in the appendix, husband has pointed us to no other place in the record

showing he preserved the argument for appeal. We thus decline to address his argument on this issue. See Rule 5A:20(c).

## B. Equitable Distribution

"In making an equitable distribution, the court must classify the property, assign a value, and then distribute the property to the parties, taking into consideration the factors listed in Code § 20-107.3(E)." Theismann v. Theismann, 22 Va. App. 557, 564, 471 S.E.2d 809, 812 (citation omitted), aff'd en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996). "'[W]here, as here, the court hears the evidence *ore tenus*, its findings are entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Ranney v. Ranney, 45 Va. App. 17, 31, 608 S.E.2d 485, 492 (2005) (quoting Alphin v. Alphin, 15 Va. App. 395, 399, 424 S.E.2d 572, 574 (1992)). This Court will not "'retry the facts, reweigh the preponderance of the evidence, or make [its] own determination of the credibility of witnesses.'" Id. (quoting Moreno v. Moreno, 24 Va. App. 190, 195, 480 S.E.2d 792, 795 (1997)).

## 1. Classification of Down Payment on Marital Residence

Husband first argues the trial court erred in classifying the $182,125 portion of the down payment on the marital residence as marital property because all of the down payment derived from husband's separate property. We find no error in the trial court's classification of those funds as marital property.

Husband contends that by simply aggregating (i) the value of husband's pre-marital financial assets, (ii) the marital income, and (iii) the marital expenses, the trial court should have concluded that the source of the entire down payment was necessarily husband's separate assets because the parties' marital expenses exceeded their marital income. This abstract assessment was the substance of the testimony of husband's forensic expert at the hearing, which the trial court correctly rejected. This approach clearly ignores the requirements of Virginia law on

- 5 -

tracing separate property for purposes of classification where, as here, separate funds and marital funds were commingled. Such commingled property is deemed transmuted to marital property, unless the separate property is *directly* traceable to a non-marital source. Rahbaran v. Rahbaran, 26 Va. App. 195, 208, 494 S.E.2d 135, 141 (1997). As we explained in Rahbaran, "[i]f . . . separate property is contributed to marital property, . . . and suffers a 'loss of identity,' the commingled separate property is transmuted to marital property." Id. (citing Code § 20-107.3(A)(3)(d)-(f)). This "rule of transmutation" is subject to exception upon proof that "'the contributed property is retraceable by a preponderance of the evidence.'" Id. at 209-10, 494 S.E.2d at 142 (citing Code § 20-107.3(A)(3)(d)-(e)). "The party claiming a separate interest in transmuted property bears [that] burden of proving retraceability," von Raab v. von Raab, 26 Va. App. 239, 248, 494 S.E.2d 156, 160 (1997), and must "*directly* trace [the claimed] portion to a separate asset," Rahbaran, 26 Va. App. at 208, 494 S.E.2d at 141 (emphasis added). "In other words, if a party 'chooses to commingle marital and non-marital funds to the point that *direct* tracing is impossible,' the claimed separate property loses its separate status." Id. at 208, 494 S.E.2d at 141 (citation omitted) (emphasis added). See Langschmidt v. Langschmidt, 81 S.W.3d 741, 748 (Tenn. 2002) (mere fact parties agreed that their monthly expenses generally exceeded husband's monthly income was not alone sufficient to trace husband's separate financial assets).

Husband contends, in the alternative, that he presented evidence, including detailed documentation, specifically tracing all of the down payment to his pre-marital assets. His testimony in this regard, however, was conclusory, and the trial court found "credibility issues" with his testimony. Furthermore, husband's own forensic expert admitted on cross-examination that he did not attempt to analyze the hundreds of inter-account transactions between the subject five accounts which husband used and controlled during the parties' four-year marriage. Thus, he could not "opine as to how the money flowed between the accounts" after it had been

deposited. In contrast, wife's forensic expert testified she did review those inter-account transactions and concluded that husband's pre-marital financial assets could not be identified in the accounts at issue.

It was husband's burden to prove by a preponderance of the evidence that the $182,125 portion of the down payment on the marital residence was, in fact, his separate property by directly tracing the funds to his pre-marital assets. Based on the evidence in the record on this issue, the trial court's finding that those funds were marital property was not plainly wrong.

The two cases husband cites in support of his argument on the tracing issue, Hurt v. Hurt, 16 Va. App. 792, 433 S.E.2d 493 (1993), and Holden v. Holden, 31 Va. App. 24, 520 S.E.2d 842 (1999), are inapposite. In Hurt, this Court affirmed the trial court's classification of certain assets held by husband as his separate property, rejecting wife's contention that through commingling husband's marital income in a "master bank account" the assets transmuted into marital property. Hurt, 16 Va. App. at 799-800, 433 S.E.2d at 497-98. It was established that the assets "were all acquired, transferred, sold or encumbered by the various entities that husband controlled through [that] account." Id. at 799, 433 S.E.2d at 497. Conflicting evidence was presented, however, "as to whether husband ever deposited [marital] funds into the master account." Id. at 800, 433 S.E.2d at 498. The trial court found no such funds were deposited in the account and thus held no transmutation occurred. Id.

In Holden, we reversed the trial court's ruling that husband failed to trace $17,000 of his separate property used towards the parties' purchase of a parcel of real estate, which the court classified as marital property. Holden, 31 Va. App. at 29-30, 520 S.E.2d at 845. There, unlike the instant case, husband presented credible evidence specifically tracing those funds to his separate property. From husband's sale of his pre-marital book collection, husband deposited $17,000 into the parties' joint checking account for the specific purpose of contributing to the

- 7 -

purchase of the real estate. Less than two months later, those funds were used to purchase the real estate, along with other funds withdrawn from the joint account. The parties acquired those additional funds by refinancing the marital residence in order to generate the balance of the purchase price. Id. at 26-28, 520 S.E.2d at 843-45. The record in that case thus showed that husband did, in fact, meet his burden to specifically trace his separate funds to his separate property where the funds were commingled with marital funds in a joint account for a short time.

2. Classification of Bank Accounts

Husband next challenges the trial court's classification as marital property: (a) bank accounts 8503 and 9089, based on his contention the accounts were his and his father's separate property, in whose names the accounts were titled; and (b) bank accounts 3734 and 7726, based on his contention those accounts were his and his teenage daughter's separate property, in whose names they were titled.

Prior to the equitable distribution hearing, wife filed a motion seeking to join husband's father and teenage daughter as third parties to the proceeding in anticipation of the court classifying and distributing funds in those accounts. Husband opposed the motion. The parties ultimately entered into an agreed order stating "[t]he third parties are not necessary in this matter; the court shall be able to evaluate that portion of those assets titled in the name of third parties and [husband] that may be marital and shall be able to make appropriate award without dividing said assets."

We affirm the trial court's marital property classification of the four bank accounts for the same reasons we affirm the court's marital property classification of the disputed portion of the residential down payment, as explained above in Section 1. To the extent husband, his father, and his teenage daughter made deposits of separate funds into one or more of the accounts, thereby commingling the funds with husband's and wife's marital funds, husband

failed to specifically trace the separate funds to a separate source. See Rahbaran, 26 Va. App. at 208-09, 494 S.E.2d at 141; von Raab, 26 Va. App. at 248, 494 S.E.2d at 160.

The court made no division of the accounts after classifying them as marital property. Instead, it simply considered the values of the accounts in determining the lump sum equitable distribution award to wife. The trial court's classification of the four accounts for purposes of equitable distribution in this case thus had no effect on the respective claims, if any, between husband and his father as to accounts 8503 and 9089, and between husband and his teenage daughter as to accounts 3734 and 7726.

### 3. Valuation Dates for Bank Accounts 3734 and 8503

Husband next argues the trial court erred in valuing bank accounts 3734 and 8503 as of the separation date, rather than as of the date of the hearing. The values of the accounts at the time of separation were $16,742.40 and $48,147.26, respectively, whereas their values at the time of the hearing were $1,958.38 and $17,789.64, respectively, representing a combined reduced value of $45,141.58.

Wife charged that the accounts' post-separation reduction in value constituted waste. Waste or dissipation occurs when "one spouse uses marital property for his own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown." Amburn v. Amburn, 13 Va. App. 661, 666, 414 S.E.2d 847, 850 (1992) (citations and internal quotation marks omitted). "Once the aggrieved spouse shows that marital funds were withdrawn or used after the breakdown, the burden rests with the party charged with dissipation to prove that the money was spent for a proper purpose." Clements v. Clements, 10 Va. App. 580, 586, 397 S.E.2d 257, 261 (1990); see also Luczkovich v. Luczkovich, 26 Va. App. 702, 714, 496 S.E.2d 157, 163 (1998) (applying Clements). "When waste has occurred, the trial

court must include the wasted assets as marital property . . . ." Booth v. Booth, 7 Va. App. 22, 28-29, 371 S.E.2d 569, 573 (1988).

Because husband possessed and controlled accounts 3734 and 8503, he was responsible for their use following the parties' separation. Clements, 10 Va. App. at 586, 397 S.E.2d at 261 (stating that "equity can only be accomplished if the party who last had the [marital] funds is held accountable for them" (citing Booth, 7 Va. App. at 28, 371 S.E.2d at 573)). Evidence of the post-separation use of funds from the accounts consisted of husband's own testimony. The trial court found his testimony insufficient to properly account for their use, and thus included those funds as marital property by valuing the accounts as of the time of separation. We find no error in that determination, particularly in light of the court having expressly taken issue with husband's credibility.

## C. Attorney's Fees

Finally, husband contends the trial court abused its discretion by awarding wife $35,000 in attorney's fees, based solely on the ground that she was awarded sufficient marital assets, including a cash payment, from which she could pay her own fees. Whether to award attorney's fees "'is a matter submitted to the sound discretion of the trial court and is reviewable on appeal only for an abuse of discretion.'" Kane v. Szymczak, 41 Va. App. 365, 375, 585 S.E.2d 349, 354 (2003) (quoting Northcutt v. Northcutt, 39 Va. App. 192, 199-200, 571 S.E.2d 912, 916 (2002)). "[T]he key to a proper award of counsel fees [is] . . . reasonableness under all of the circumstances revealed by the record." McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 162 (1985).

Wife incurred in excess of $50,000 in attorney's fees and costs in enforcing her legal rights. In awarding wife a portion of this amount, the trial court considered the fact that, even with her award of marital assets, husband was in a superior financial position, based on his award

- 10 -

of marital assets and his income. The court also recognized that husband was at fault for the divorce. "Factors to be considered include the respective financial positions of the spouses and their degree of fault in precipitating the end of the marriage." Gilman v. Gilman, 32 Va. App. 104, 124, 526 S.E.2d 763, 773 (2000); see Theismann, 22 Va. App. at 574, 471 S.E. 2d at 817 ("Where the husband is in a clearly superior financial position and his [behavior] precipitated dissolution of the marriage, the trial court may properly award attorney's fees to the wife." (citing Poliquin v. Poliquin, 12 Va. App. 676, 682, 406 S.E.2d 401, 405 (1991))). Under these circumstances, we hold the trial court's award of attorney's fees was not an abuse of discretion.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.