COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Haley and Senior Judge Annunziata
Argued at Alexandria, Virginia


LOWELL F. SMITH

                                                MEMORANDUM OPINION[*] BY
v.        Record No. 1165-06-4                  JUDGE LARRY G. ELDER
                                                   MARCH 6, 2007
ALICE L. THORNTON-SMITH


                 FROM THE CIRCUIT COURT OF CLARKE COUNTY
                              John R. Prosser, Judge

             Marilyn Ann Solomon for appellant.

             James A. Klenkar (Hall, Monahan, Engle, Mahan & Mitchell, on
             brief), for appellee.


        Lowell F. Smith (husband) appeals from the equitable distribution and spousal support

awards entered on behalf of Alice L. Thornton-Smith (wife).  On appeal, he contends the trial

court erroneously classified and valued various assets; awarded wife spousal support; and

granted wife an award of attorney's fees.  Wife disputes husband's assignments of error and

challenges another of the court's classification rulings.  We affirm the trial court's rulings

classifying the Arlington and Berryville properties.  However, we hold the court erroneously

classified the Volkswagen, which necessitates a remand to the trial court to reexamine the

equitable distribution award.  We find no error in the provision of the written order holding that

the amount of credit card debt wife admitted owing, plus her advance on the equitable

distribution award, was offset by what the court determined to be wife's portion of the marital

equity in the Arlington residence.  However, on remand, the court may wish to revisit this issue

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

because the trial court's statements from the bench and contents of its written order appear to conflict. Because we reverse the equitable distribution award in part, we do not address the assignments of error pertaining to spousal support and direct the trial court to consider anew its spousal support award in light of the changes in the equitable distribution award. Finally, we hold the court's award of attorney's fees was not an abuse of discretion, and we affirm it.

I.

A.  EQUITABLE DISTRIBUTION

On appeal, we review the evidence in the light most favorable to the party prevailing below. See, e.g., Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999). "It is well established that the trier of fact ascertains [witnesses'] credibility, determines the weight to be given their testimony, and has the discretion to accept or reject any of the [witnesses'] testimony[, in whole or in part]." Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (en banc); see Anderson, 29 Va. App. at 684-88, 514 S.E.2d at 375-77 (affirming trial court's rejection of tracing testimony). A trial court's classification of property is a finding of fact. Robinson v. Robinson, 46 Va. App. 652, 661, 621 S.E.2d 147, 151 (2005) (en banc).

"All property . . . acquired by either spouse during the marriage . . . is presumed to be marital property in the absence of satisfactory evidence that it is separate property." Id. "A partner in a marriage owes his labor during the marriage to the marital partnership[;] [t]he fruits of that labor, absent express agreement, are marital property." Stainback v. Stainback, 11 Va. App. 13, 24, 396 S.E.2d 686, 693 (1990).

1.  Classification of $50,000 of Equity in Arlington Residence

Where funds contributed to real estate "reduce the amount of a lien on the property (i.e., mortgage payments), . . . these contributions result in acquisition of entirely new value." 1 Brett Turner, Equitable Distribution of Property § 5:24, at 385 (3d ed. 2005). "Mortgage payments

- 2 -

[made during the marriage] [do] not increase the value of the existing separate interest; rather, they [result in the acquisition of] an entirely new marital interest by reducing the amount of the mortgage lien." Id. at 386. Thus, the additional $50,000 of equity in the Arlington residence gained during the marriage was "property acquired . . . during the marriage" and was "presumed to be marital property in the absence of satisfactory evidence that it is separate property." Code § 20-107.3(A)(2). Husband, the party claiming a separate interest in the $50,000 of equity acquired during the marriage, bore the burden of retracing to his separate property, by a preponderance of the evidence, the funds used to acquire that equity. See Code § 20-107.3(A)(3); von Raab v. von Raab, 26 Va. App. 239, 248, 494 S.E.2d 156, 160 (1997); Rahbaran v. Rahbaran, 26 Va. App. 195, 208, 494 S.E.2d 135, 141 (1997). The evidence supported the trial court's finding that he failed to do so.

Although husband presented mortgage account records that showed he paid off about $16,000 of the mortgage in regular monthly payments and the remaining balance in a few larger, lump-sum payments, the trial court rejected as not credible husband's testimony that no more than a few thousand dollars came from marital funds. It was undisputed that the monthly mortgage payments were made from an account at SunTrust Bank set up solely for that purpose, but the ultimate source of those funds was not clear. Husband admitted he made one or two deposits into the SunTrust account directly from his Everbank account, which the trial court was entitled to conclude held marital funds.[1] The trial court was entitled to reject, as it did, husband's

---

[1] The evidence was uncontradicted that all of husband's earnings during the marriage were deposited into the Everbank account, which had a balance of approximately $70,000 when they were married. Although the funds in the Everbank account originally were separate, the deposits of husband's net earnings, in the amount of over $50,000 per year in 2001 and 2002, supported a finding that the separate funds in that account could no longer be identified. The Everbank account ebbed and flowed as husband used it for the parties' living expenses during the marriage, and husband made no attempt to retrace his separate property. See Asgari v. Asgari, 33 Va. App. 393, 402-03, 533 S.E.2d 643, 648 (2000) (holding where parties "commingl[ed] separate and marital assets" in a single account and "unspecified sums of marital

undocumented testimony that the remaining funds had not come from the Everbank account and were not marital funds. Husband contended those funds came from his GE Interest Plus account, an account in which he maintained a balance of several hundred thousand dollars during the marriage and which he contended held only his separate funds. However, husband's financial records showed that, during 2001 and 2002, he removed at least $100,000 from the Everbank account, in even amounts ranging from $1,000 to $20,000, and husband was unable to establish to the satisfaction of the trial court what he did with any of that money. He conceded that numerous deposits into the GE account corresponded in date and amount to withdrawals from the Everbank account and probably represented deposits of funds from the Everbank account into the GE account, the account from which husband admitted making at least $16,000 of the monthly mortgage payments during the marriage.[2] Thus, the trial court was entitled to conclude that husband failed to retrace these funds to his separate property.

Similarly, the trial court was entitled to reject husband's testimony about the source of the lump sum payments he made to reduce the mortgage, particularly in light of the numerous changes in husband's testimony about the source of those funds. The court expressly found that these changes in testimony caused husband's "credibility [to] suffer[] greatly in the eyes of the

---

funds were thereafter deposited and withdrawn from the account, the balance regularly ebbing and flowing for months," "the identity of husband's separate funds had been lost in countless unspecified transactions involving marital funds, resulting in the irreversible transmutation of separate into marital property"). Thus, the evidence supported a finding that the funds in the Everbank account were marital. Wife did not seek a share of the Everbank account itself, and we consider its classification only for the purpose of determining whether husband met his burden of retracing to his separate funds the money used to make the final $50,000 in mortgage payments on the Arlington residence.

[2] As with the Everbank account, discussed in footnote 1, supra, wife did not seek an interest in any of the funds in the GE Interest Plus account at the time of separation or divorce. We consider the classification of the funds in this account only for the purpose of determining whether husband met his burden of retracing to his separate funds the money used to make the final $50,000 in mortgage payments on the Arlington residence.

- 4 -

Court" because husband "had been so adamant about [the source of the funds] on several prior episodes of testimony." Husband testified on deposition that those funds "would have" come from his GE Interest Plus account. Then, at trial, husband testified that he paid about $35,000 of the balance with an inheritance he had received from his mother's estate. When the trial court gave husband an opportunity to locate documentation supporting that claim, husband obtained his payment history from the mortgage company and admitted to the court he had actually applied his inheritance to the mortgage balance in 1999 or 2000, prior to his marriage to wife. The mortgage payment history showed, instead, two lump sum payments of $22,000 and $11,000 made during the parties' marriage. Viewing the evidence in the light most favorable to wife, husband failed to retrace those payments to his separate funds. Husband was unable to trace the source of the $11,000 payment except to say that it did not come from the Everbank account. As to the $22,000 payment, husband claimed it came from a life insurance policy he had owned for almost fifty years and cashed in during the marriage, but the trial court was entitled to conclude that husband's testimony and the records he introduced did not prove this retracing by a preponderance of the evidence.

This evidence supported the trial court's finding that husband failed to meet his burden of proving what, if any, portion of the $50,000 of equity in the Arlington residence was retraceable to his separate property and justified the classification of the entire increase as marital property.

### 2. Berryville Residence

Because the Berryville house was acquired during the marriage and titled jointly to husband and wife, it is marital property as defined in Code § 20-107.3(A)(2) unless one of the exceptions contained in Code § 20-107.3(A)(3) applies. See Robinson, 46 Va. App. at 663, 621 S.E.2d at 152. We hold that subdivision (A)(3)(f), involving a situation in which "separate property is retitled in the joint names of the parties," is applicable. Contrary to wife's argument,

- 5 -

the application of this subdivision is not limited to those cases in which real estate, previously titled to only one party, is retitled to both parties. Rather, assuming the funds husband used to purchase the Berryville house were his separate property, the funds themselves were "retitled" within the meaning of subdivision (A)(3)(f) when husband used them to purchase the jointly titled marital residence. Any other result would elevate form over substance by requiring a spouse, desiring to assure the future ability to retrace separate funds, to purchase a house in his name alone and then to retitle the house jointly in order to recover under subdivision (A)(3)(f). Nothing in the language of subdivision (A)(3)(f) indicates such an intent. See Bchara v. Bchara, 38 Va. App. 302, 312-14, 563 S.E.2d 398, 403-04 (2002) (applying Code § 20-107.3(A)(3)(d), (e), and (f) to hold wife successfully retraced money used to purchase jointly titled marital residence to her separate funds in separate bank account). Thus, the trial court properly found the Berryville property was husband's separate property if he retraced the funds to his separate property and the retitling of those funds was not a gift. Code § 20-107.3(A)(3)(f).

A spouse seeking to retrace separate funds is not required to have segregated the separate funds from all other marital funds in order to claim a separate interest in that amount. See Rahbaran, 26 Va. App. at 207, 494 S.E.2d at 141; Holden v. Holden, 31 Va. App. 24, 28-29, 520 S.E.2d 842, 845 (1999) (holding spouse traced separate property following commingling of separate and marital funds in jointly-owned bank account, which was then used for purchase of marital property). "'As long as the respective marital and separate contribution to the new asset can be identified, the court can compute the ratio and trace both interests.'" Rahbaran, 26 Va. App. at 209, 494 S.E.2d at 141-42 (quoting Brett R. Turner, Equitable Distribution of Property 266 n.591 (1994)). Just as a spouse may trace separate funds deposited into a jointly owned bank account, he also may trace marital funds deposited into a separately owned bank account.

The trial court held husband did just that here, and the evidence supported that determination. Husband had about $594,000 in the GE account when the parties married. Wife's evidence established that he withdrew about $100,000 from the Everbank account, into which his paychecks were routinely deposited, during the marriage and deposited at least $40,000 of those funds into the GE Interest Plus account. However, the balance in the GE account did not decrease by any significant amount prior to the purchase of the Berryville residence in the spring of 2002. In light of these figures, the trial court was entitled to conclude that the comparatively small sum of between $40,000 and $100,000 of marital funds, deposited into husband's separate GE account, did not prevent husband from retracing the $345,000 in separate funds from the GE account that he used to purchase the Berryville house. See Holden, 31 Va. App. at 27-29, 520 S.E.2d at 844-45.

The evidence also supported the trial court's finding that husband did not make a gift of the funds to wife. Per Code § 20-107.3(A)(3)(h), "[n]o presumption of gift arises from the fact that the property was retitled." Theismann v. Theismann, 22 Va. App. 557, 565, 471 S.E.2d 809, 813, aff'd on reh'g en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996). The party claiming the existence of a gift must prove by clear and convincing evidence "(1) intention on the part of the donor to make a gift; (2) delivery or transfer of the gift; and (3) acceptance of the gift by the donee." Id. at 566, 471 S.E.2d at 813. If the party claiming a separate interest proves retraceability and the other party fails to prove transmutation of the property by gift, the Code states that the contributed separate property "shall retain its original classification." Code § 20-107.3(A)(3)(d), (e), (f); see Hart v. Hart, 27 Va. App. 46, 68, 497 S.E.2d 496, 506 (1998).

Although wife testified husband said the home was a gift to her, husband testified he did not make a gift of the property to wife, and the trial court accepted husband's testimony. Because the evidence supported the trial court's findings that husband retraced his separate

property and that wife failed to prove the property was a gift, the trial court's classification of the Berryville residence as husband's separate property was not error.

### 3. Volkswagen

The evidence supports the trial court's threshold finding that the "Volkswagon was purchased by [husband's] separate funds." Husband bought it within a few weeks of the parties' marriage, using funds from a separate account he owned prior to his marriage. This account, the GE Interest Plus account, was not the one into which husband's paychecks were directly deposited during the marriage, and no deposits of any sort were made into this account between the time of the parties' marriage and the purchase of the Volkswagen. Thus, husband successfully retraced the Volkswagen to his separate funds, and the burden shifted to wife "to prove that the transmutation of the separate property resulted from a 'gift.'" von Raab, 26 Va. App. at 248, 494 S.E.2d at 160.

Here, the court originally ruled "there's no evidence that shows" husband made a gift of any interest in the Volkswagen to wife. Subsequently, however, the court vacated that ruling because it concluded its ruling on another aspect of the equitable distribution was made prematurely. Although the trial court received no additional evidence on the issue of the Volkswagen purchase, wife's attorney argued thereafter in closing that "[wife] testified [the Volkswagen] was a gift." That statement was erroneous, as wife did not testify, either at trial or on deposition, that the Volkswagen was a gift.[3] Thus, the trial court's finding that wife "testified [the Volkswagen] was a gift" was plainly wrong.

---

[3] Wife asserts on brief that the trial court found credible her "testimony that the VW Beetle was a gift" and that this credibility determination was correct. However, wife cites no portion of her testimony, at trial or on deposition, in support of this assertion, and we have found no such testimony in the record.

- 8 -

We hold further, as a matter of law, that the remaining evidence in the record was insufficient to support a finding that husband made a gift to wife of an interest in the Volkswagen. Although no magic words are required to establish a gift, cf. Robinson, 46 Va. App. at 667 n.13, 621 S.E.2d at 154 n.13 (holding trial court "not required to use any 'magic words' to find that husband gifted wife with a portion of his trust income" but that "language used by the court must contain some language from which a finding of donative intent, delivery, and acceptance could be inferred"), the party claiming the existence of a gift must prove donative intent, delivery and acceptance, and "[n]o presumption of gift arises from the fact that the property was retitled," Theismann, 22 Va. App. at 565-66, 471 S.E.2d at 813.

Here, wife presented no evidence indicating that husband intended to make a gift to her of the Volkswagen, and husband specifically denied having such an intent. Although the trial court was free to reject husband's testimony, the remaining evidence was insufficient to prove, by clear and convincing evidence, that he acted with the requisite donative intent. The evidence established that wife had a Volvo when the parties married and that she still owned the Volvo at the time of the equitable distribution proceedings. Within a few weeks of the parties' marriage, at a time when the parties were happy in the relationship, husband used separate funds to purchase the Volkswagen and titled it jointly. Thereafter, wife drove the Volkswagen to her job in West Virginia two days each week. The parties' Arlington house was located on a metro line, and husband took public transportation to his office in Washington, D.C. At other times, husband used a car he rented from a partnership in which he had an interest. When wife left the marital residence, she took the Volkswagen with her and had exclusive use of it thereafter.

This evidence, viewed in the light most favorable to wife, does not prove by clear and convincing evidence that husband acted with the requisite donative intent. Absent additional evidence, the record renders it just as plausible that husband desired for wife merely to *have the*

*use of* a safe, economical car for her travels to West Virginia and that he did not intend to make a gift to her of the car itself or any portion thereof. Thus, we reverse the trial court's decision classifying the Volkswagen as marital property and awarding it to wife.

### 4. Amount of Wife's Separate Debt Based on Credit Card Advances

Citing Smith v. Smith, 43 Va. App. 279, 597 S.E.2d 250 (2004), husband contends the trial court had the authority to equitably distribute marital debt but not wife's separate credit card debt. We reject the application of that principle under the facts of this case. The debt was on husband's credit card.[4] Because wife admitted she had incurred the debt herself and that it was her sole responsibility, the trial court apportioned payment of that debt to her for purposes of equitable distribution. Offsetting wife's obligation to husband for this credit card debt against husband's obligation to wife for her share of the marital equity in the Arlington residence is precisely what a trial court is authorized to do in equitably distributing the marital estate. See Code § 20-107.3(C) ("The court shall also have the authority to apportion and order the payment of the debts of the parties, *or either of them*, that are incurred prior to the dissolution of the marriage . . . ." (emphasis added)). This principle stands in marked contrast to a case in which a spouse, in his or her own name only, incurs debt to a third party, someone not his or her spouse, for the purchase of separate property. See Smith, 43 Va. App. at 290 n.5, 597 S.E.2d at 255 n.5 (providing that "[a]ny third-party debt incurred by a spouse in the purchase of separate property should . . . be classified as separate debt outside the scope of equitable distribution"). Thus, we reject husband's claim that the court lacked authority to resolve the issue of wife's credit card debt as an offset against other property rather than requiring wife to make payment of the debt directly to him.

---

[4] It appears from the record that wife was an authorized user of the credit cards at issue but that husband alone was liable to the creditor for the charges.

Husband also contends the trial court erroneously found wife took $25,000 in cash advances from husband's credit cards rather than the $36,000 she admitted taking, not including various fees and finance charges, and not including charges of $3,300 for purchasing furniture. He contends the court compounded this error by declaring the debt "a wash" against wife's fifty percent interest in the Arlington equity of $50,000.

The record confirms that wife, both through her testimony and through representations of counsel, agreed that she took $36,000 in cash advances. Immediately following wife's testimony to that effect, the trial court confirmed wife's agreement to the $36,000 figure and stated that husband was "entitled to a credit for that when it all washes out." However, during the subsequent hearing at which the trial court made its equitable distribution ruling, it referred to the sum of the cash advances wife took from husband's credit cards as $25,000 rather than $36,000. It also stated its intention to award wife $25,000 of the $50,000 worth of marital equity in the Arlington residence. Coupled with the trial court's other findings regarding marital property and its value, the court found these figures left wife owing husband about $800. Thus, the trial court's statements from the bench appear to be based on an erroneous debt figure.

However, under settled principles, a court speaks through its orders. E.g., Stamper v. Commonwealth, 220 Va. 260, 280-81, 257 S.E.2d 808, 822 (1979). When a court's statements from the bench conflict with its written order, the order controls. See id. Here, the court's written order did not make specific findings regarding the percentage of the marital equity in the Arlington residence it was awarding to wife and also did not make specific findings regarding the amount of wife's credit card charges. Rather, the order stated merely that "the Husband's pay-off of the mortgage on his Arlington property from marital funds and the Wife's substantial credit card charges at the time of separation and $7,000 equitable distribution advance offset each other." Thus, one interpretation of the order is that the trial court used the correct debt

- 11 -

figure of $36,000 and awarded wife a share of greater than fifty percent of the marital equity in the Arlington residence.

Because we reverse a portion of the equitable distribution ruling, which requires a remand for further proceedings consistent with this opinion, we need not consider the merits of this assignment of error in the instant appeal, but we note the discrepancy so that, on remand, the trial court may review its ruling on this issue to ascertain whether the provisions of the order as entered comport with the trial court's intentions and the evidence in the record.

### 5.  Overall Distribution of Marital Estate

Because we reverse and remand based on the trial court's erroneous classification of the Volkswagen and suggest clarification of the trial court's ruling regarding the amount of wife's credit card debt to husband and the percentage division of the marital equity in the Arlington residence, we do not consider husband's claim that he received a net 17% of the marital assets and that this distribution was reversible error.

### B.  SPOUSAL SUPPORT

Husband contends the trial court erred in awarding wife spousal support on numerous grounds, including errors in the equitable distribution award.  Based on our conclusion above that the trial court committed reversible error in effecting the equitable distribution, we remand to the trial court with directions to reconsider wife's spousal support request in light of the final resolution of the equitable distribution.  See Code § 20-107.1(E)(8) (requiring that court entertaining request for spousal support must consider, *inter alia*, "[t]he provisions made with regard to marital property under § 20-107.3").

We note, for purposes of remand, that although "[s]pouses entitled to support 'have the right to be maintained in the manner to which they were accustomed during the marriage,'" the recipient spouse's "'needs must be balanced against the other spouse's financial ability to pay.'"

- 12 -

Stubblebine v. Stubblebine, 22 Va. App. 703, 710, 473 S.E.2d 72, 75 (1996) (en banc) (quoting Floyd v. Floyd, 1 Va. App. 42, 45, 333 S.E.2d 364, 366 (1985)). Thus, the record must contain sufficient evidence not only of the payor spouse's ability to pay but also of the recipient spouse's need, and the evidence must support the trial court's decision both to award support and to order payment in a specific amount. As a component of assessing a party's need for support, the court may impute income to that party based on a finding of voluntary underemployment, but the burden of proof is on the party seeking imputation, Niemiec v. Dep't of Soc. Servs., 27 Va. App. 446, 451, 499 S.E.2d 576, 579 (1998), and a court's "refusal to impute income will not be reversed unless plainly wrong or unsupported by the evidence," Blackburn v. Michael, 30 Va. App. 95, 102, 515 S.E.2d 780, 784 (1999).

## C. ATTORNEY'S FEES

Whether to award attorney's fees is left to the sound discretion of the trial court. See, e.g., Lightburn v. Lightburn, 22 Va. App. 612, 621, 472 S.E.2d 281, 285 (1996). A court is not bound by its preliminary rulings and may change its rulings until more than twenty-one days have elapsed from a final ruling. See Torian v. Torian, 38 Va. App. 167, 175, 562 S.E.2d 355, 359-60 (2002).

Here, the court announced on August 2, 2005, that it would award attorney's fees of $12,000, and then vacated that ruling several weeks later. On December 1, 2005, it announced an award of $5,000, and then, on February 4, 2006, before entering the final decree, the court issued a letter opinion indicating that its award of $5,000 had been an error and that it intended to award fees of $12,000. The final decree entered April 17, 2006, contained an attorney's fee award of $12,000. The court's award of $12,000, considered in light of the reasons it announced from the bench on December 1, 2005, did not constitute an abuse of discretion.

- 13 -

## II.

For these reasons, we affirm the trial court's rulings classifying the Arlington and Berryville properties. However, we hold the court erroneously classified the Volkswagen, which necessitates a remand to the trial court to reexamine the equitable distribution award. We find no error in the provision of the written order holding that the amount of credit card debt wife admitted owing, plus her advance on the equitable distribution award, was offset by what the court determined to be wife's portion of the marital equity in the Arlington residence. However, on remand, the court may wish to revisit this issue because the trial court's statements from the bench and contents of its written order appear to conflict. Because we reverse the equitable distribution award in part, we do not address the assignments of error pertaining to spousal support and direct the trial court to consider anew its spousal support award in light of the changes in the equitable distribution award. Finally, we hold the court's award of attorney's fees was not an abuse of discretion, and we affirm it.

Affirmed in part,
reversed in part,
and remanded.